436 A.2d 1033

**Linda ROQUE**

**v.**

**NATIONWIDE INSURANCE CO., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1981.

Filed Nov. 6, 1981.

Petition for Allowance of Appeal Granted Feb. 18, 1982.

Michael J. Donohue, Scranton, for appellant.

Joseph Papparelli, Scranton, for appellee.

Before SPAETH, JOHNSON and WIEAND, JJ.

JOHNSON, Judge:

This is an appeal from an Order of the Court of Common Pleas, Lackawanna County, denying the defendant's Motion for Summary Judgment and granting Summary Judgment in favor of the plaintiff.

Plaintiff-appellee is the beneficiary of a life insurance policy on the life of Thomas Roque. The policy provided for an additional benefit if the insured's death resulted from "bodily injury caused solely by external, violent and accidental means." The insurance company paid on the life insurance policy but denied the additional accidental death benefit. The beneficiary brought suit against the appellant insurance company.

The death of the insured occurred after he was shot by a policeman while apparently burglarizing an unoccupied home. The police had arrived, summoned by a burglar alarm system, while the insured was upstairs. The insured called out a warning to the policeman to get out or he would kill him, and as the insured emerged from the bedroom carrying a gun he had found in the bedroom, the policeman fired, killing the insured.

The insurance company appeals the summary judgment granted to the beneficiary on the grounds that it is entitled to judgment as a matter of law because the death of the insured cannot be considered the result of an accident. Brief for Appellant at 5. The court in its decision relied on

*Wetzel v. Westinghouse Electric Corporation,* 258 Pa.Super.Ct. 500, 393 A.2d 470 (1978). In that case the insured, a karate expert, attacked his son, also a karate expert, with a sword, and was ultimately killed by the son after a lengthy fight. The appellate court found that the death of the insured was due to "violent, external and accidental means" within the meaning of the policy and that the innocent beneficiary must recover. 258 Pa.Super.Ct. at 505, 393 A.2d at 473.

Appellant insurance company further argues that there is a distinction between *Wetzel* and the instant case in that (1) *Wetzel* involved a family quarrel and not a "premeditated felony" and (2) the person attacked in *Wetzel* was not armed with a deadly weapon. These distinctions are not legally significant. In both cases the insured was killed following his attacking, or threatening to attack, the person who, in response, killed him.

The insurance company proceeds to argue that *Wetzel* is bad law and should be reversed. Brief for Appellant at 6. To support its argument it cites cases from other jurisdictions where deaths occurring in circumstances similar to those of this case were held not to be "accidental". In light of the direction that Pennsylvania cases have been taking in recent years, however, *Wetzel* seems to be a natural progression rather than an aberration. In *Beckham v. Travelers Insurance Company,* 424 Pa. 107, 225 A.2d 532 (1967), the insured died after taking an overdose of narcotics. In allowing recovery of benefits under a double indemnity provision for injury "through accidental means" the court repudiated any attempts to analyze "accidental means" under a theory involving unreasonable risks taken by the insured which resulted in his death. Appellant acknowledges this, Brief for Appellant at 9, but urges instead an "unavoidable consequence" theory whereby if the insured's death was the inevitable result of his own actions, recovery should be barred. As we read *Beckham,* we are of the opinion that "unavoidable consequences" is simply another aspect of the "unreasonable risk" test which the Supreme

Court preferred to avoid because of its ambiguity and imprecision. As we see it, the Court chose to depart from any doctrine "that recovery should be denied if the insured's death, although unintentional, resulted from an intentional act of the deceased." *See Beckham,* 424 Pa. at 110, 225 A.2d at 533. *See also Mohn v. American Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974), where the court stated:

As has been indicated the modern legal trend is to abandon the former "reasonably foreseeable" rule and treat the occurrence as accidental even though it resulted from the insured's criminal conduct. This Court noted its adherence to the modern view in our decision in *Beckham v. Travelers Insur. Co.,* 424 Pa. 107, 225 A.2d 532 (1967). There we stated:

"It has been suggested, however, that we limit our holding to those cases which do not involve an unreasonable risk of harm to the insured and that we therefore affirm the Superior Court's decision. This argument, of course, assumes that the insured's action in the instant case did amount to an unreasonable risk of harm. While this assumption might be valid vis-a-vis his general health and well being, there is no basis in the record for concluding that the insured was unduly exposing himself to the risk of death by his action. Moreover, no jurisdiction which has interpreted accidental means and accidental results to be legally synonymous has denied recovery on the basis of the above suggested distinction. Indeed some jurisdictions maintaining the distinction have permitted recovery in similar situations.

More importantly, the attempt to determine, on the basis of the clause in question, what is and what is not an unreasonable risk will return us to the Serbonian bog from which are are attempting to escape. While we see nothing improper in a contractual limitation which would disclaim coverage in cases such as the instant one, we are unwilling to recognize such a restriction on the basis of the ambiguous language contained in this policy which the company knew was susceptible of different interpreta-

tions." (Footnotes omitted). 424 Pa. at 116–117, 225 A.2d at 536–537.

458 Pa. at 585, 326 A.2d at 351. In the *Mohn* case the insured was shot by police while fleeing a burglary he had been committing. The Pennsylvania Supreme Court held that the insured's death was the result of "accidental bodily injury" within the coverage of two medical insurance policies.

Appellant next argues that denial of benefits in such circumstances as those of this case would deter such behavior. Brief for Appellant at 8. Appellant acknowledges that our Supreme Court has specifically rejected this public policy argument. *See Eisenman v. Hornberger*, 438 Pa. 46, 264 A.2d 673 (1970). In that case the insured was the father of an adolescent who, with another, broke into an unoccupied home and, using matches to light his way around the house, unknowingly dropped one where it eventually started a fire which burned down the house. The court held that a provision in the father's homeowner's policy excluding intentionally caused property damage did not exclude the damage caused by the fire.

> [U]nder the facts of this case, we are not confronted with any overriding public policy which would preclude recovery. There is no evidence whatsoever that the policy was procured in *contemplation* of the crime. Nor can the insurance policy be said to have *promoted* the unlawful act. *Moreover, it seems equally implausible that denying coverage would serve as a crime deterrent.*

438 Pa. at 50, 264 A.2d at 675 (additional emphasis supplied). But appellant argues that the cases are distinguishable and the public policy argument should apply here. We refer Appellant to *Mohn, supra* :

> Although admittedly we are here concerned with recovery under an accident policy and not recovery of property damage as was the case in the *Eisenman*[1] decision, nevertheless we believe this distinction to be meaningless and that the reasoning of that decision is particularly

1. *Eisenman v. Hornberger, supra.*

appropriate to the facts of the instant appeal. Furthermore, most of those jurisdictions which still embrace the public policy argument as a basis for denying recovery ... provide an exception where the suit is being brought by an innocent beneficiary as is the instant case. For the reasons set forth we therefore hold that recovery cannot be denied on the basis of public policy.

458 Pa. at 584, 326 A.2d at 351.

Ambiguities in an insurance contract should be resolved against the writer, and there is a presumption in favor of coverage when the extent of coverage is unclear. *Evans v. Baltimore Life Insurance Co.*, 216 Pa.Super.Ct. 425, 268 A.2d 155 (1970). Courts have found that the insurance company could have included a violation of law clause in the policy. *See, e. g., Mohn v. American Casualty Co., 458 Pa. at 584, 326 A.2d at 350.*

Appellant's second allegation is that the lower court erred in granting a summary judgment for the plaintiff. Appellant states that there is a jury question as to whether the insurance policy was obtained in contemplation of the crime. (There is a suggestion in *Eisenman v. Hornberger, supra,* and in *Mohn v. American Casualty Co., supra,* that procuring the policy in contemplation of crime might bar recovery under the policy.) It is the law that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a), 42 Pa.C.S.A. (Pamp.1981). *See also, Bell v. Koppers Co., Inc.,* 481 Pa. 454, 392 A.2d 1380 (1978); *Commonwealth v. Piper,* 458 Pa. 307, 328 A.2d 845 (1974); *Clark v. Rutecki,* 408 Pa. 25, 182 A.2d 687 (1962).

Furthermore, it was appellant who moved for summary judgment. Appellant signed the stipulation of facts. A summary judgment is granted when there is no genuine issue of material fact. Pa.R.C.P. 1035, 42 Pa.C.S.A. (Pamp. 1981). *Eisenman v. Hornberger, supra,* and *Mohn v. American Casualty Co., supra,* are not new cases. Appellant cannot now complain that there was a factual question.

The order is affirmed.