STATE FARM FIRE AND CASUALTY
COMPANY Plaintiff,

v.

James DUNLAVEY, Jody Dunlavey, Ka-
tie Maschal, 2209 Enterprises t/a T's
Route 13 Sports Arena, and Thomas
Sheedy Defendants.

No. 98–CV–4902.

United States District Court,
E.D. Pennsylvania.

Dec. 6, 2001.

Daniel G. Sanders, Marshall, Dennehey, Warner, Coleman & Goggin, Timothy C. Costello & Associates, Philadelphia, PA, for State Farm Fire and Casualty Company.

James Dunlavey, State Correctional Facility at Graterford, Graterford, PA, pro se.

Jody Dunlavey, Croydon, PA, pro se.

Robert E. Slota, Law Offices of Robert E. Slota, Bryn Mawr, Harry J. Glosser, Jr., Morrisville, PA, for James Dunlavey, Inmate Number CX5471, Jody Dunlavey, Katie Maschal, 2209 Enterprises, Inc. t/a T's Route 13 Sports Arena, Thomas Sheedy.

### MEMORANDUM AND ORDER

TUCKER, District Judge.

This action arises from the provisions of a homeowner's insurance policy issued by Plaintiff State Farm Firm and Casualty

Company ("State Farm")[1] to Defendants James and Jody Dunlavey ("the Dunlaveys")[2]. In the early morning hours of May 2, 1995, James Dunlavey and Defendant Katie Maschal ("Maschal")[3] had an altercation at T's Route 13 Sports Arena that resulted in injuries to Ms. Maschal's head. On October 15, 1997, Ms. Maschal filed a complaint against 2209 Enterprises, Thomas Sheedy, the owner of the sports bar, and James Dunlavey in the Bucks County Court of Common Pleas ("the Maschal action"). As a result of the claims alleged by Maschal, the Dunlaveys sought a defense and indemnification from State Farm pursuant to their homeowner's policy[4]. State Farm retained counsel to defend the Dunlaveys, but made a reservation of rights giving the parties notice that it was State Farm's position that it owes no duty to defend or indemnify the Dunlaveys with respect to the Maschal action.

On September 14, 1998, Plaintiff State Farm filed this declaratory judgment action seeking an order that the Dunlaveys are not entitled to defense or indemnity under their State Farm homeowners policy in the Maschal action.[5] The Court conducted a non-jury trial on October 30, 2001 on Plaintiff's declaratory judgment action.

It is the declaration of the Court that Plaintiff State Farm owes a duty to defend and indemnify the Dunlavey defendants in the Maschal action. In accordance with Federal Rule of Civil Procedure 52(a), the Court enters the following findings of fact and conclusions of law as a final determination of this case.

## DISCUSSION

■ In September of 1998, State Farm instituted the instant Declaratory Judgment Action seeking the Court's declaration that it is not required to defend Mr. Dunlavey in the suit brought against him by Katie Maschal. State Farm's Declaratory Judgment Action also prays for the Court's declaration that it has no obligation to indemnify Mr. Dunlavey for any settlement he enters with Katie Maschal or from any judgment entered against him by Katie Maschal in her civil action filed in the Court of Common Pleas of Bucks County. *See* Exhibit P–7. This issue central to both declaratory judgments is a determination by this Court of whether coverage is precluded under the policy's intended harm exclusionary clause because the underlying assault was an intentional

1. Plaintiff State Farm is an Illinois corporation that serves as a licensed homeowner insurer in the Commonwealth of Pennsylvania. *See* Exhibit P–7 (Joint Findings of Fact and Conclusions of Law).

2. Defendant James Dunlavey is an adult individual who is an inmate at the State Correctional Facility at Graterford, P.O. 244, Graterford, PA 19426. *See* Exhibit P–7. Defendant Jodi Dunlavey is an adult individual who resides at 1122 Second Avenue, Croyden, PA 19021. *See* Exhibit P–7.

3. Defendant Katie Maschal is an adult individual who resides at 1416 Mingo Street, West Bristol, Pennsylvania 19007. Ms. Maschal is the plaintiff in the underlying civil suit against James Dunlavey, Thomas Sheedy and 2209 Enterprises, Inc. *See* Exhibit P–7.

4. State Farm Fire and Casualty Co. had previously issued a homeowners insurance policy with personal liability coverage to defendants James Dunlavey and Jody Dunlavey identified by policy, number 78–E1–0309–2 with effective dates of July 17, 1994 through July 17, 1995. *See* Exhibit P–7.

5. This action is filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., for the purpose of determining a question in actual controversy between the parties. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 by virtue of diversity jurisdiction, the amount in controversy, inclusive of interest and costs, being in excess of $75,000 and there exists diversity of citizenship among the parties.

act that does not qualify as an "occurrence." In order to determine whether a claim may potentially come within the coverage of the policy, we must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint. *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 59, 639 A.2d 1208 (1994) (citing *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 509, 603 A.2d 1050).

## A. Policy Language [6]

■ The homeowner insurance policy issued through State Farm, Special Form 3, provides that:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will: (1) pay up to our limit of liability for the damages for which the **insured** is legally liable; and (2) provide a defense at our expense by counsel of our choice.[7] We will make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit end when the amount we pay for damages, to effect settlement or to satisfy a judgment resulting from the **occurrences**, equals our limit of liability.

6. The parties have agreed that Pennsylvania law governs the construction and interpretation of the insurance contract, as it was delivered and received in Pennsylvania by Pennsylvania residents. *See* Exhibit P–7.

7. The policy language makes State Farm's duty to defend coterminous with its duty to indemnify. The Third Circuit has stated that where such linkage of duties occurs, "absent other considerations, the insurer is not bound to defend where it cannot be bound to indemnify, [] regardless of when the duty to indemnify comes to an end." *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d

Exhibit P–7. The State Farm policy defines the term "occurrence," in relevant part as "an accident, including exposure to conditions which results in bodily injury...during the policy period." *Id.* The policy also includes an intended harm exclusionary clause that denies coverage for bodily injury which is "either expected or intended by an insured," or "which is the result of willful or malicious acts of an insured."[8] *Id.*

## B. State Farm's Duty to Defend or Indemnify

■ The interpretation of an insurance policy is governed by the following rules of contract interpretation: 1) terms must be given their ordinary meaning; 2) ambiguous terms should be construed against the insurer; 3) "a term is ambiguous only if 'reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning;' " and 4) the parties' "true intent must be determined not only from the language but from all the surrounding circumstances." *United Services Auto. Assoc. v. Elitzky*, 358 Pa.Super. 362, 369, 517 A.2d 982 (1986) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 352 Pa.Super. 78, 507 A.2d 389, 392 (1986)); *See also Mohn v. American Cas. Co. of Reading* 458 Pa. 576, 585, 326 A.2d 346 (1974) (citing *Burne v. Franklin Life Insur. Co.*, 451 Pa. 218, 226, 301 A.2d

214, 218 (1986) (insurer's duty to defend terminates upon exhaustion of policy limits)

8. An intended harm clause within an insurance contract is coterminous with the public policy exclusion. *Elitzky* at 375, 517 A.2d 982 (noting that a contrary conclusion would lead to the illogical holding that certain acts are not excluded from coverage under an "intended harm" clause but are nonetheless excluded because of public policy). A separate discussion on the issue of public policy is not necessary. *Stidham* at 563, 618 A.2d 945 fn. 2.

799 (1973)) ("Furthermore, where the contract is one of insurance any ambiguity in the language of the document is to be read in a light most strongly supporting the insured.")

 The underlying complaint fixes the parameters of an insurer's obligation to defend its insured. *Elitzky* at 368, 517 A.2d 982. A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage. *Mut. Benefit Ins. Co. v. Haver,* 555 Pa. 534, 538, 725 A.2d 743. *See also General Accident Ins. Co. of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089 (1997); *Wilson v. Maryland Cas. Co.,* 377 Pa. 588, 595, 105 A.2d 304 (1954). If coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside of the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured. *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 564, 618 A.2d 945 (1992). State Farm may rely on evidence outside the underlying complaint to prove that it has no duty to indemnify the underlying claim. *Am. States Ins. Co. v. State Auto Ins. Co.,* 721 A.2d 56, 63 (1998) (quoting *Pacific Indem. Co. v. Linn,* 590 F.Supp. 643 (E.D.Pa.1984), *aff'd,* 766 F.2d 754 (3rd Cir.1985)). The Court will consider the underlying civil complaint, the prior criminal conviction, and intent testimony submitted in the instant action to determine if the intended harm exclusionary clause precludes indemnification.

## 1. Nature of the Underlying Complaint

On October 15, 1997, Ms. Maschal filed a Complaint in the Bucks County Court of Common Pleas against Mr. Dunlavey and the T's Route 13 Sports Area seeking compensatory damages for her injuries. The Maschal action alleges that on May 2, 1995, "Dunlavey was visibly intoxicated" and "carelessly, negligently, and recklessly swung a heavy motorcycle helmet in the direction of [her] head, and struck [her] in the head causing severe head injuries." *See* Exhibit P-2 at 2-3 (Underlying Civil Complaint captioned *Katie Maschal vs. James Dunlavey, Jody Dunlavey, Thomas Sheedy, and 2209 Enterprises, Inc.*). The plaintiff in the underlying action has stated a claim for negligent or reckless, rather than intentional, infliction of injury, which appeared to qualify as an "occurrence" within the policy's coverage, triggering the insurer's duty to defend. However, State Farm argues that Dunlavey's prior conviction proves that there is no duty to indemnify, which would in turn terminate the duty to defend. The Court's inquiry will now turn the evidence surrounding the prior conviction.

## 2. Prior Conviction

 As a result of the his actions on May 2, 1995, Mr. Dunlavey was subsequently convicted in a jury trial on November 14, 1995 of aggravated assault [9], simple assault [10], recklessly endangering another person [11], and disorderly conduct [12]. *See* Exhibit P-7. State Farm has repeatedly

---

**9.** Under Pennsylvania law, a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to value of human life." 18 Pa.C.S.A. § 2702(a)(1)

**10.** Under Pennsylvania law, a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1)

**11.** Under Pennsylvania law, a person is guilty of recklessly endangering another person if he

submitted proof of this conviction as conclusive evidence of Mr. Dunlavey's intent to harm. However, a conviction in prior criminal proceedings cannot preclude a victim from litigating the issue of the insured actor's intent where a determination of intent was not essential to the conviction. *See Stidham* at 566, 618 A.2d 945. If the criminal proceedings did not establish the extent, if any, of his conscious awareness of the insured's action or the substantial likelihood of the results, the conviction cannot conclusively establish a bar to recovery under the insured's homeowner's policy. *Id.* at 568, 618 A.2d 945.

Intentional conduct is not a necessary element of any of the crimes of which Dunlavey was convicted. Each may be predicated on reckless conduct as alleged by Ms. Maschal. Without a specific finding by the jury as to intent, there is no way for this Court to determine whether the criminal verdict was based on a finding of intentional conduct, which falls within the insurance policy exclusion and is a bar to recovery in this action, or reckless conduct, which is covered by the policy under prevailing Pennsylvania case law.

## C. Subjective Intent

State Farm has also submitted excerpts of the criminal trial transcripts [13] in an

effort to prove intent to harm from the events surrounding the injury to Ms. Maschal. Ms. Maschal [14] and Mr. Dunlavey [15] have also provided testimony and information concerning these events.

The parties are generally in agreement on the sequence of events leading up to the altercation. Defendants Katie Maschal and James Dunlavey were present at the premises of T's Route 13 Sports Arena/Sports Bar in Croyden, Pennsylvania in the early morning hours of May 2, 1995. *See* Exhibit P-7. Maschal and Dunlavey were known to each other and to the bartenders at the bar. *See* Exhibit P-4 (Criminal Trial Transcript—Day 2) at 10:5–8; Exhibit P-3 (Criminal Trial Transcript—Day 1) at 32:20–21; Exhibit P-3 at 18:18–24, 19:6–14, 64:18–21, 65:12–16; Bench Trial Trans. ("BT") at 30:25–31:2. Both were intoxicated. *See* Exhibit P-3 at 102:6–9 (Maschal); Exhibit D-I (Toxicology Report of Ms. Maschal); BT 42:3–4 (James Dunlavey) Mr. Dunlavey was being generally obnoxious, harassing bar patrons and spewing obscenities until he was asked to leave the bar after verbally harassing Ms. Weiszgerber, the barmaid, who refused to serve him additional drinks. *See* BT 30:18–31:25 (James Dunlavey); BT

"recklessly engages in conduct which places or may place another person in danger of death of serious bodily injury." 18 Pa.C.S.A. § 2705

**12.** Under Pennsylvania law, a person is guilty of disorderly conduct if "with intent to cause intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)

**13.** These excerpts contain the testimony of Ms. Maschal, Jennifer Weiszgerber and Richard Clem, who were both employee representatives of T's Route 13 Sports Arena present the night of the altercation, and Mr. Dunlavey's handwritten statement to the police dated the day after the altercation that was previously submitted at the criminal trial.

**14.** In addition to testifying at the declaratory judgment trial, Ms. Maschal has submitted Mr. Dunlavey's deposition testimony from her underlying civil action.

**15.** Mr. Dunlavey testified at the declaratory judgment trial, and offered testimony from his wife and fellow defendant, Jody Dunlavey, as well as her long-time friend, Sonya Latimer.

51:8–16(Maschal); Exhibit P–3 at 21:9–24:9 (Clem); Exhibit P–4 at 3:12–4:6 (Maschal). Mr. Dunlavey picked up his motorcycle helmet by the straps in order to leave, and continued to argue with Ms. Weiszgerber and Mr. Clem, the bar manager while holding the helmet in his hand. *See* BT 30:21–33:8 (James Dunlavey). Mr. Dunlavey has been blind in his left eye since it was removed in 1970. *See* BT 34:9–12 (James Dunlavey); BT 79:24–80:1 (Jody Dunlavey). On the night in question, he was wearing a prosthetic glass eye in his left socket and could only see out of his right eye. BT 35:13–21.

However, the facts surrounding the actual exchange of blows between Ms. Maschal and Mr. Dunlavey are in dispute. Ms. Maschal testified in the first day of the criminal trial that Mr. Dunlavey grabbed her chest, and that she responded by backhanding him in the face. *See* Exhibit 3 at 106:1–107:14. At the time that Ms. Maschal hit Mr. Dunlavey, they were arguing. *Id.* at 107:20–108:1. After she hit Mr. Dunlavey, she was restrained by Craig Morrisey, another patron at the bar; while she was still facing Mr. Dunlavey, she was hit by the helmet, although she did not see the blow coming. *Id.* at 108:3–23. On her second day of testimony, Ms. Maschal tells substantially the same story. *See* Exhibit 4 at 5:12–6:13, 18:14–20:1. She indicates that Dunlavey was not argumentative towards her prior to her slap, but that there was a "face-to-face" confrontation after her slap, and he knew who had hit him. *Id.* at 5:12–16, 6:6–18. At the declaratory judgment trial, Ms. Maschal testified that Mr. Dunlavey kept pulling her top down while engaging in a verbal exchange with Mr. Clem and Ms. Weiszgerber. *See* BT 51:8–16. Ms. Maschal swung off her stool and slapped Mr. Dunlavey with the back of her right hand in the face. *Id.* at 51:17–22. Ms. Maschal reports that a group of people rushed in to restrain her between the time that she slapped Mr. Dunlavey and the time that she was hit. *Id.* at 51:23–52:19. She was hit by Mr. Dunlavey without any warning "just almost an instant" after she hit him. *Id.* at 52:20–53:4, 53:15–22.

Richard Clem testified at the criminal trial that Mr. Dunlavey was threatening him with his helmet when, "out of the blue," Ms. Maschal hit Mr. Dunlavey "upside the right side of his face." *See* Exhibit P–3 at 24:10–18. After Ms. Maschal struck Mr. Dunlavey, he composed himself while two or three other guys grabbed Ms. Maschal and pulled her away from Mr. Dunlavey. *Id.* at 24:19–25:9. At this time, Mr. Dunlavey knew who had hit him and called Ms. Maschal an obscenity. *Id.* at 25:13. Mr. Dunlavey then stepped up and swung the helmet over the shoulder of one of the men who was restraining Ms. Maschal and who was positioned between Dunlavey and Maschal, hitting her "square on the head"; after this, Mr. Clem handed Mr. Dunlavey his glasses and he left the bar *Id.* at 26:10–28:24.

Ms. Weiszgerber testified at the criminal trial that Ms. Maschal intervened to try to defend her from Mr. Dunlavey's verbal abuse, which caused Mr. Dunlavey to direct his anger at Ms. Maschal and call her a number of obscenities. *See* Exhibit P–3 at 45:18–46:9. Ms. Maschal pushed Mr. Dunlavey out of the way, and he pushed her back, which caused Ms. Maschal to punch him once in the face. *Id.* at 46:10–47:1. At this point, a couple of patrons tried to get Ms. Maschal away from Mr. Dunlavey, but she kept fighting them. *Id.* at 47:2–8. Meanwhile, Mr. Dunlavey instructed Mr. Clem to pick up his glasses and give them to him; Mr. Clem retrieved the glasses, gave them to Mr. Dunlavey, and asked him to leave the bar. *Id.* at 47:8–12. There was no one between Mr. Dunlavey and Ms. Maschal while the two

of them continued to yell at each other. *Id.* at 48:1–2, 48:18–24. Mr. Dunlavey got back up after bending over from the blow and while he was exchanging words with Ms. Maschal, he hit her "right over the head." *Id.* at 48:3–15.

Mr. Dunlavey made a handwritten statement to Officer Thomas Hadzick on May 3, 1995 that was read into evidence at the criminal trial and offered as evidence at the declaratory judgment trial. *See* Exhibit P–4 at 55:9–56:22. In that statement, Mr. Dunlavey testified that while he was speaking to Mr. Clem, Ms. Maschal struck him in the right eye without warning, temporarily blinding him. *Id.* at 56:1–6. At this point, he asked the manager not to move, and felt about the floor and found his glasses, which had been broken by Ms. Maschal's blow. *Id.* at 56:7–10. As he got up from finding the glasses, Ms. Maschal was standing right next him. *Id.* at 56:10–12. Being scared that Ms. Maschal would attack him again before he could see clearly, Mr. Dunlavey "swung at her" with his helmet. *Id.* at 56:12–16. It was not his intention to injure her, simply to defend his eye until he could "figure out what was going on." *Id.* at 56:12–20. At the declaratory trial, Mr. Dunlavey indicated that this statement was not an accurate description of the chain of events, as shown by the testimony of other witnesses, and that he was extremely upset at the time that he wrote the statement. *See* BT 27:2–25.

Mr. Dunlavey later gave deposition testimony for Ms. Maschal's civil action which has been read into the record at the declaratory action after being submitted in part by Ms. Maschal as exhibits. *See* Exhibits M–1 (Deposition of James Dunlavey in the Maschal action) and M–5 (Defendant Maschal's Supplemental Disputed Findings of Fact and Conclusions of Law). Mr. Dunlavey testified that as he was turning away from Mr. Clem, he heard a voice say "Don't you talk to him like that." *See* BT 71:18–21. He stopped, and as he turned his head to the right to look, he got hit in his right eye, which is his only eye. *Id.* at 71:21–25. He glasses shattered and his eye felt injured, causing his vision to be fuzzy. *Id.* at 71:25–72:2, 73:16–23. The helmet was already in his right hand as he backed up a step or two with his head bent down, backing into the pool table. *Id.* at 72:3–4, 72:18–21, 73:23–25. "Basically instantaneously, he heard "a bunch of feet, commotion, real quick" and in reaction, swung his helmet from his right hand in a sweeping motion in defense of his eye since he couldn't see." *Id.* at 72:4–8, 73:25–74:3. He did not know who or what he was swinging at due to his impaired vision, and indicates that he had no intent to harm Ms. Maschal. *Id.* at 74:4–19.

At the declaratory trial, Mr. Dunlavey testified that during his argument with Mr. Clem, Ms. Maschal walked up to him and they had an exchange. *See* BT 33:9–12. As he was turning away to leave, he got hit in his eye causing him to be unable to see for a few minutes. *Id.* 33:16–17, 36:1–6. The impact of the blow broke his glasses and caused him to stumble back a couple of steps. *Id.* at 33:16–18. The pool table was right behind him and his head was down. *Id.* at 33:18–20. He heard "a big commotion, like people rushing" and swung his helmet, which was already in his hand, in front of him, accidently hitting Ms. Maschal in the head. *Id.* at 33:20–34:3. He was unable to see when he swung the helmet and did not intend to strike or injure Ms. Maschal. *Id.* at 36:6–10. 36:22–37:3.

In addition to his testimony, Mr. Dunlavey has submitted new evidence to clarify his ability to see Ms. Maschal in order to form the intent to assault her, and the extent of his injuries as the result of the

blow to his right, and only functioning, eye. His wife testifies that on the morning after the incident, Mr. Dunlavey complained of vision fuzziness and eye swelling, and that on May 5, 1995, three days after the bar incident, the eye turned black and blue, and she persuaded her husband to see Dr. Stein of Woodbourne Eye Center. BT 80: 5–24. Dr. Stein's report, dated the same day, indicates that Mr. Dunlavey suffered an orbital contusion and traumatic iritis of the right eye, as well as a cut on his nose from his eyeglasses breaking. Exhibit D–2. The impact to the glasses from Ms. Maschal's blow was enough to bend the frames and knock out the right eye lens. Exhibit D–3.

 In considering the intent testimony, there are a number of legal doctrines guiding the Court. Under Pennsylvania law, "imbibed intoxicants must be considered in determining if the actor has the ability to formulate an intent." *Stidham* at 563, 618 A.2d 945 (citing *Nationwide Mut. Ins. Co. v. Hassinger*, 325 Pa.Super. 484, 473 A.2d 171 (1984)) (reversing summary judgment granted to insurer where insured allegedly shot and killed victim during alcohol-induced blackout). If the actor does not have the ability to formulate an intent, the resulting act cannot be intentional. *Id.*[16]

 Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage. *Elitzky* at 371, 517 A.2d 982 (noting that Pennsylvania law is "clear" on the issue that the exclusionary clause only applies when the insured intends to cause

a harm, and "is inapplicable even if the insured should have foreseen the injury which his actions caused."); *see also Mohn* at 585, 326 A.2d 346 (noting that modern trend is to reject the former "reasonably foreseeable" rule and to treat an occurrence as accidental even though it resulted from the insured's criminal conduct, allowing for recovery where the insured was fatally wounded while fleeing from a burglary). In the case before the Court, there is no dispute as to Mr. Dunlavey's intent to swing the helmet, but wildly divergent testimony as to his intent to injure Ms. Maschal.

In addition, the Pennsylvania courts have consistently held that coverage of an insured "that causes a harm of a generally different type than that which he set out to cause" is "consistent with public policy." *Elitzky* at 373–4, 517 A.2d 982. In rejecting the opposing viewpoint the insured is responsible for any and all harm that results no matter how far from the character and magnitude of the injury which the insured actually intended, the *Elitzky* court gave the hypothetical example of an insured who angrily slaps someone in the face, intending only to sting the victim's cheek, but the victim's head jumps back from the impact and hits a wall, causing neurological damage and sending the victim into a coma. The *Elitzky* court's interpretation of an intended harm exclusionary clause under this set of facts would allow recovery under the insurance policy. Any opposition to this viewpoint "ignores that it is a contract which we are interpreting and that we must do so in light of the parties reasonable expectations." *Id.* (cit-

---

**16.** However, intoxication does not prevent a finding of subjective intent that precludes insurance coverage. *See e.g. State Farm Mut. Auto. Ins. Co. v. Martin*, 442 Pa.Super. 442, 660 A.2d 66 (1995) (court found intoxicated insured who mounted the lawn with his truck and struck his wife before driving his truck into the wall of his wife's house had the subjective intent to harm,); *Hassinger* (jury found an intoxicated insured had the subjective intent to harm where he drove over the curb and across the sidewalk to hit decedent, and got out of the car afterwards and said "I told you I would get the son-of-a-bitch").

ing *Standard Venetian Blind Co. v. Am. Empire. Ins.*, 503 Pa. 300, 469 A.2d 563 (1983)). The *Elitzky* hypothetical illustrates the narrow application of the intended harm exclusionary clause taken by the Pennsylvania courts.

 Finally, an intended harm exclusionary clause in an insurance contract is ambiguous as a matter of law and must be construed against the insurer. *Elitzky* at 375, 517 A.2d 982. The case law, coupled with the evidence of the insured's intoxication, physical infirmity in his left eye, temporary injury to his right eye, and the conflicting testimony as to intent, does not support a finding that State Farm has conclusively proven that the insured had the subjective intent to cause harm within the meaning of *Elitzky*. As such, Plaintiff is not entitled to a finding that the insured's actions were the result of wilful or malicious intent or that the insured intended the resultant harm to Ms. Maschal in order to trigger the insurance policy's exclusions.

### CONCLUSION

It is therefore the declaration of this court that Plaintiff State Farm owes a duty to defend and indemnify Defendants James and Jody Dunlavey in the underlying action filed by Defendant Katie Maschal in the Court of Common Pleas of Bucks County, Pennsylvania, No. 99–3287. It is further ordered that to the extent any party obtains a judgment or in the future obtains a judgment against James and Jody Dunlavey requiring the payment of damages, expenses, costs or fees, Plaintiff State Farm has an obligation to pay such an amount.