

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-1998

# Nationwide Mutl Fire v. Pipher

Precedential or Non-Precedential:

Docket 97-1282

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Nationwide Mutl Fire v. Pipher" (1998). *1998 Decisions.* Paper 52.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/52

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 17, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1282

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
OF COLUMBUS, OHIO

v.

LINDA PIPHER; FRANCIS MCFADDEN; FRANCIS
MCFADDEN, AS TRUSTEE AD LITEM FOR VIRGINIA
ELIZONDO, MICHAEL DARIO AND KRISTEN DARIO;
VIRGINIA ELIZONDO; MICHAEL DARIO; KRISTINE DARIO;
ERNEST SCHAFER; ROSE SCHAFER; IAN S. WOOD,
Philadelphia Phot #724409 Prisoner #9608644

        Linda Pipher,

        Appellant

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 96-cv-07462

Submitted Under Third Circuit LAR 34.1(a)
October 15, 1997

Before: STAPLETON, ALITO, and ROSENN, Circuit Judges.

(Opinion Filed March 17, 1998)

Thomas M. Going
German, Gallagher & Murtagh
200 South Broad Street
5th Floor
Philadelphia, PA 19102
Counsel for Appellee

Robert H. Nemeroff
Jaffe, Friedman, Schuman,
 Schilla, Nemeroff & Applebaum
7848 Old York Road
Suite 200
Elkins Park, PA 19027
Counsel for Appellant

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents an important question pertaining to the meaning of the term "occurrence" as used in a liability insurance policy. Specifically, it raises the issue whether a plaintiff's bodily injury or death, directly caused by the intentional act of a third party but also attributable to the negligence of the policyholder-insured, constitutes an "occurrence," and thus obligates an insurer to defend, and potentially indemnify, its insured for the insured's alleged negligence. The insurer in this case, Nationwide Mutual Fire Insurance Company of Columbus, Ohio (Nationwide), filed a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania seeking a declaration that because an intentional act of a third party caused the plaintiff's death, there was no accident or "occurrence" and thus Nationwide has no duty to defend and indemnify its insured. The district court granted summary judgment for the insurance company. The insured appealed. We reverse.

I.

The facts pertaining to this appeal are uncomplicated and, for the most part, undisputed. The insured, Linda

2

Pipher (Pipher), is the owner of a multi-unit dwelling located in Philadelphia, Pennsylvania, previously owned by her parents, Ernest and Rose Schafer. Prior to December 1994, the Schafers and/or Pipher removed the doors to the second floor apartment of the property in order to install new carpeting. These doors were never reinstalled. At all relevant times, Nationwide insured Pipher's property under a "Tenant's Policy."

In December 1994, Pipher leased the second floor apartment to Francis McFadden and his wife, Bernine. On February 3, 1995, Ian S. Wood, whom Pipher hired to paint the apartment, killed Bernine McFadden while she occupied the second floor apartment. As a result of Bernine McFadden's death, her husband, Francis, filed a state survival action for wrongful death against Pipher, Wood, the Schafers, and others in Philadelphia Court of Common Pleas. McFadden v. Pipher, No. 865, May Term 1996. Nationwide undertook Pipher's defense subject to a reservation of rights.

Nationwide then filed a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania. Nationwide sought a declaration that it has no duty to defend and indemnify Pipher because Bernine McFadden's death was caused by an intentional assault and murder committed by Wood, and thus her death was not an insured "occurrence" as defined in the policy. Because there was no factual dispute, Nationwidefiled a motion for summary judgment. The district court granted Nationwide's motion, thereby relieving Nationwide of its duty to defend and potentially indemnify Pipher. Pipher timely appealed.1

_____

1. The district court had diversity jurisdiction pursuant to 28 U.S.C. S 1332, as the parties are citizens of different states and the amount in controversy exceeded the then applicable amount of $50,000. This Court has appellate jurisdiction of the district court'sfinal order pursuant to 28 U.S.C. S1291.

It is undisputed that Pennsylvania law applies. The district court applied Pennsylvania law, as do we.

3

II.

This appeal presents solely a legal issue. Thus, this court's review of the district court's grant of summary judgment is plenary. See Robertson v. Central Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995); see also Fed. R. Civ. P. 56(c); Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985) (determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law subject to plenary review).

A.

Pipher's Tenant's Policy with Nationwide provides her with liability coverage for all "damages [she] is legally obligated to pay due to an occurrence." (Tenant's Policy) (emphasis added). The policy, in relevant part, defines occurrence as "bodily injury . . . resulting from: a. one accident." On appeal, Nationwide relies principally upon Gene's Restaurant, Inc. v. Nationwide Ins. Co., 548 A.2d 246 (Pa. 1988), and a progeny of cases in the United States District Court for the Eastern District of Pennsylvania. These cases hold that to constitute an accident, and thus a covered occurrence, the court must focus on the nature of the act which inflicted the injury or directly caused the death, and that act must be unintentional, even when an insured is sued for negligently failing to prevent or for contributing to the harmful intentional acts of the person who directly inflicted the injury or caused the death.[2]

_____

2. E.g., Britamco Underwriters, Inc. v. George Giouzelis, Inc., No. CIV. A. 93-4547, 1994 WL 622109 (E.D. Pa. Nov. 8, 1994), aff'd without opinion, 65 F.3d 161 (3d Cir. 1995), cert. denied, 116 S. Ct. 1029 (1996); Britamco Underwriters, Inc. v. Logue's Tavern, Inc. , No. CIV. A. 95-2997, 1995 WL 710570 (E.D. Pa. Dec. 1, 1995); Britamco Underwriters, Inc. v. Stone, No. CIV. A. 91-4691, 1992 WL 195378 (E.D. Pa. Aug. 3, 1992); Terra Nova Ins. Co., Ltd. v. Thee Kandy Store, Inc., 679 F. Supp. 476 (E.D. Pa. 1988); see also Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208 (Pa. Super. Ct. 1994). But see Britamco Underwriters, Inc. v. Weiner, 636 A.2d 649 (Pa. Super. Ct. 1994) (distinguishing Gene's Restaurant and holding that the insurer owed its insured a duty to defend because the plaintiff 's complaint alleged alternate theories of recovery (i.e., intentional and negligent conduct), which may potentially come within the scope of the liability insurance policy).

4

In Gene's Restaurant, the complaint merely alleged that while she was a patron in the defendant insured's restaurant, the defendant assaulted and violently beat her, causing injuries and damages. The complaint contained no allegations of negligence on the part of the insured. The insurer (Nationwide) refused to defend its insured against the complaint sounding solely in trespass which alleged only a willful and malicious assault and beating. The liability policy at issue in that case similarly defined an "occurrence" as an accident. Accordingly, the Pennsylvania Supreme Court summarily affirmed the Superior Court's holding that the insurer owed no duty to defend its insured based on these facts. That holding is sound, but it in no way dictates that an insurer owes no duty to defend its insured when the complaint also alleges that the assault was made possible by the negligence of the insured.

We believe the holding in Gene's Restaurant was narrow and predicated on the well-established rule of insurance law that an insurer's duty to defend an action brought against its insured is to be determined solely by the allegations contained in the plaintiff 's pleadings. E.g., General Accident Ins. Co. of America v. Allen, 692 A.2d 1089, 1094 (Pa. 1997); Gene's Restaurant, 548 A.2d at 246; Wilson v. Maryland Cas. Co., 105 A.2d 304, 307 (Pa. 1954). Because the complaint alleged solely an intentional act and contained no allegations of negligence on the part of its insured, the Gene's Restaurant court came to the unremarkable conclusion that an intentional tort was not an accident and thus not a covered occurrence under the policy.

Nationwide contends that under Gene's Restaurant, the intentional murder of Bernine McFadden by Wood is not an occurrence (i.e., an accident) but rather an intentional tort which is not covered by the policy. Thus it claims that it is therefore relieved of its duty to defend and potentially indemnify Pipher, notwithstanding in this case there are distinct allegations of negligence that the insured's conduct made possible the assault and murder. Nationwide's argument, however, is premised on a misreading of Gene's Restaurant by it, by the district court in this case, and by the district courts in the cases cited in Nationwide's brief.

This has resulted in an unwarranted extension of the import of that case. The case against Pipher is clearly distinguishable from Gene's Restaurant. Here, the plaintiff's complaint raises numerous allegations of negligence on the part of Pipher, which allegedly contributed to Bernine McFadden's death. In this case, the plaintiff alleges that, among other things, Pipher "negligently fail[ed] to re-install the apartment doors necessary for the tenant's security;" "negligently failed to provide a reasonably safe premises for the tenants;" and "negligently hired Ian S. Wood to paint the second floor apartment." Although Bernine McFadden's death was the direct result of a third party's intentional conduct, the complaint alleges that the insured's own negligence also played a significant part in her death. In the absence of any Pennsylvania Supreme Court precedent directly on point, we believe that if confronted with this question, that court would find this distinction alone to be sufficient to hold that an insurance company has a duty to defend its insured against complaints alleging negligent conduct on the part of the insured as well as a third party's intentional conduct. See, e.g., Polselli v. Nationwide Mutual Fire Ins. Co., 126 F.3d 524, 528 n.3 (3d Cir. 1997) (federal courts sitting in diversity must predict how state high court would decide issue); Surace v. Caterpillar, Inc., 111 F.3d 1039, 1044 (3d Cir. 1997) (same).

B.

Numerous cases support the conclusion we reach. Under Pennsylvania law, "the fact that the event causing [bodily injury or damage to property] may be traceable to an intentional act of a third party does not preclude the occurrence from being an `accident.' " Mohn v. American Cas. Co. of Reading, 326 A.2d 346, 348 (Pa. 1974); accord Wetzel v. Westinghouse Elec. Corp., 393 A.2d 470, 472-73 (Pa. Super. Ct. 1978) (citing Mohn with approval). In Mohn, the insured's son was fatally wounded by a police officer while attempting to flee from the scene of a burglary he was committing. The insured brought an action under two medical insurance policies for reimbursement of expenses he incurred as a result of his son's hospitalization. The

pertinent provisions of the policies obligated the insurance company to provide coverage "for eligible expense incurred as a result of injury." Id at 347. "Injury" as used in the policy was defined as "accidental bodily injury which causes the loss directly and independently of all other causes." Id. The trial court found that there was no "accidental" bodily injury when an escaping felon is shot, and the Superior Court affirmed. The Pennsylvania Supreme Court viewed the terms of the policy differently. It noted that "[i]n health and accident policies the law is now reasonably clear that the fact that the event causing the injury may be traceable to an intentional act of a third party does not preclude the occurrence from being an `accident.' . . . [T]he test of whether injury is a result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury." Id. at 348. The court held that the "accidental bodily injury" language of the policy encompassed the injuries sustained by the insured's son during his flight from the police. Id. at 352.

As the Mohn court notes, it is well established that the test of whether the injury or damage is caused by an accident must be determined from the perspective of the insured and not from the viewpoint of the person who committed the injurious act. See, e.g., Roque v. Nationwide Mutual Ins. Co., 467 A.2d 1128, 1129 (Pa. 1983); Mohn, 326 A.2d at 348; State Farm Mut. Auto Ins. Co. v. Martin, 660 A.2d 66, 67 (Pa. Super. Ct. 1995). From the Pipher's standpoint, Bernadine McFadden's assault and death was unexpected, entirely fortuitous, and, therefore, an accident. Thus, in this case, from Pipher (the insured's) perspective, her alleged negligence -- the failure to re-hang the doors to the leased apartment and the hiring of Wood, a known troubled person -- resulted in a tragic accident (i.e., the unintended and unexpected murder of her tenant Bernine McFadden).

The rule seems to be well-settled in other jurisdictions that it is the intentional conduct of the insured which precludes coverage, not the acts of third parties. Although a third party may have intentionally injured or killed the plaintiff, the death or injury may still be deemed to be an

accident under the terms of the policy. See Ferdinand S. Tinio, Accident Insurance: Death or Injury Intentionally Inflicted by Another as Due to Accident or Accidental Means, 49 A.L.R. 3d 673, 679, at S3 (1973 & 1983) (collecting cases from 37 states). Furthermore, there are various types of situations in which individuals are held to be vicariously liable for an intentional tort of another person. See Robert F. Keeton & Alan I. Widiss, Insurance Law S 5.4(d)(5) (student ed. 1988). Finally, many courts have expressly held in favor of the insured in coverage disputes involving the intentional conduct of third parties. See, e.g., Aetna Ins. Co. v. Webb, 251 So.2d 321 (Fla. Dist. Ct. App. 1971) ("it is reasonable to imply that the insurance company intended to cover losses caused by the acts, intentional or otherwise, of third parties"); Jones v. Doe, 673 So.2d 1163 (La. Ct. App. 1996) ("the intentional act exception . . . only operates to keep an insured from seeking indemnification for his own intentional acts[; t]he exception does not operate simply because an intentional tort has occurred; it operates only when an intentional tort is committed by the insured"); Nalea Realty Corp. v. Public Svc. Mut. Ins. Co., 656 N.Y.S.2d 613 (N.Y. App. Div. 1997) (affirming award of settlement amount to insured landlord from liability insurer for damages paid in underlying suit involving intentional criminal act of third party (shooting tenant), and citing with approval Beach Haven Apts., infra); Beach Haven Apts., No. 6, Inc. v. Allcity Ins. Co., 182 A.D.2d 658 (N.Y. App. Div. 1992) (insurance company obligated to defend and indemnify the insured apartment building owner in tort suit for criminal rape and assault of third-party tenant which occurred in the building's basement); Farmers Ins. Of Columbus, Inc. v. Sotak, Nos. 94APE01-127, 94APE01-128, 1994 WL 383723 (Ohio Ct. App. July 19, 1994) (unpublished opinion) ("when a case of insurance coverage is viewed from the perspective of the insured . . . the consequence of a third-party's criminal agency would be accidental to the victim whether such harm was through an intentional act or criminal negligence") (emphasis added).

C.

Nationwide's argument, that confining our review to the allegations against the insured to determine whether there

has been an occurrence (i.e., accident) would render the policy's exclusion of bodily injury "expected or intended by the insured" redundant and meaningless, is also unconvincing. This exclusion, included in standard-form comprehensive general liability policies since the mid-1960s, is not simply another definition of accident. Instead, its express purpose is to clarify the vantage point from which the fortuity of the occurrence should be viewed: the insured's, and not that of the person who is injured or the insurer. See, e.g., Koppers Co., Inc. v. Aetna Cas. and Sur. Co., 98 F.3d 1440, 1447 n.6 (3d Cir. 1996); Elitzky, 517 A.2d at 986; Sam P. Rynearson, Exclusion of Expected or Intended Personal Injury or Property Damage Under the Occurrence Definition of the Standard Comprehensive General Liability Policy, 19 Forum 513, 521-23 (1984); James L. Rigelhaupt, Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured, 31 A.L.R. 4th 957, 971-72, at S2[a] (1984); cf. Hanover Ins. Co. v. Crocker, 688 A.2d 928 (Me. 1997) ("provisions excluding from coverage injuries intentionally caused by `the insured' refer to a definite, specific insured, who is directly involved in the occurrence that causes the injury").

Without the exclusionary clause, it could be argued that an intentional injury producing act by the insured was an accident because the actual injury sustained by the plaintiff might have been unintended or unexpected or might even have been unintended but expected. And, obviously, from the standpoint of the injured party, the injury almost always would be accidental because it was unintended or expected by that party. Thus, the clause precludes these arguments and eliminates this ambiguity by clarifying that the relevant focus is upon the injury itself as viewed from the perspective of the insured, and not upon the act which produced the injury or the injury as viewed from the perspective injured party. Accordingly, the exclusionary clause applies only when the insured intends to cause a harm. See Elitzky, 517 A.2d at 987.

D.

Finally, in light of the above, it is obvious that the term "occurrence" is ambiguous in this context and thus should be construed against Nationwide so as to provide coverage to its insured, Pipher. See, e.g., Mohn , 326 A.2d at 351 ("[W]here the contract is one of insurance any ambiguity in the language of the document is to be read in a light most strongly supporting the insured.") (citations omitted). Insurance companies have known for over 30 years how to draft a provision that excludes coverage for damages or injuries caused by the intentional conduct of third parties. See, e.g., Colonial Life & Accident Ins. Co. v. Wagner, 380 S.W.2d 224, 225 (Ky. 1964) (policy "shall not cover death or other loss caused or contributed to . . . by injuries intentionally inflicted upon the insured by any other person") (emphasis added); Butler v. Peninsular Life Ins. Co., 115 So.2d 608 (Fla. Dist. Ct. App. 1959) (policy"shall be null and void if the insured's death or other loss .. . results directly or indirectly from . . . intentional act or acts of any person or persons") (emphasis added).3  Thus, if Nationwide intended to exclude from coverage the intentional conduct of third parties that is fortuitous when viewed from the standpoint of the insured, they apparently have known how to do so for many years. We conclude, therefore, that the term "occurrence," as used in Pipher's Tenant's Policy, includes bodily injury or death which is directly caused by the intentional act of a third party, but which is also attributable to the negligence of the insured.

_____

3. See also Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1217 (3d Cir. 1989) ("no coverage shall apply under the policy for any claim . . . based on assault and battery, and assault and battery shall not be deemed an accident, whether or not committed by or at the direction of the insured"); Britamco Underwriters, Inc. v. Logue's Tavern, No. CIV. A. 95-2997, 1995 WL 710570, at *3 (E.D. Pa. Dec. 1, 1995) (the insurer "is under no duty to defend or to indemnify an insured in any action or proceeding alleging [intentional torts] [r]egardless of degree of
culpability or intent and without regard to . . .[w]hether the acts are alleged to be by or at the instruction or at the direction of the insured, his . . . employees, agents, servants; or by any other person lawfully or otherwise on . . . premises owned or occupied by the insured; or by any other person").

III.

In summary, we believe that the Pennsylvania Supreme Court would hold that an occurrence, as used in a liability insurance policy, includes a plaintiff 's bodily injury or death that is the direct result of the intentional act of a third party when the injury or death is also attributable to the negligence of the insured. Thus, the court would hold that the insurer is obligated to defend under such policy and potentially indemnify its insured when the complaint alleges the insured's negligence. Accordingly, the district court's grant of summary judgment will be reversed and the case remanded to the district court with directions to enter a declaratory judgment consistent with this opinion. Costs taxed against the appellee.

11

ALITO, Circuit Judge, concurring.

I concur in the result reached by the majority, but I write separately to provide a brief supplementary explanation. In this case, the insured, Linda Pipher, was sued for damages resulting from the death of Bernine McFadden. That suit alleged that McFadden was intentionally killed in an apartment that she and her husband had rented from Pipher; that the assailant, Ian S. Wood, was hired by Pipher to paint the apartment; and that McFadden's death resulted from Pipher's negligence. Among other things, the complaint asserted that Pipher was negligent in failing to re-install doors necessary for the safety of the tenants and in hiring Wood, who was allegedly known to be a drug abuser. App. 116. Pipher's insurance policy with Nationwide provides coverage for "damages the insured is legally obligated to pay due to an occurrence." App. 91. The term "occurrence" is defined as including "bodily injury or property damage resulting from . . .[an] accident." Id. at 84. The critical question in this appeal, therefore, is whether McFadden's death was an "accident" within the meaning of the policy.

An "accident" is generally understood to be an event that is "unintentionally caused." Random House Dictionary of the English Language 9 (1967). Here, the complaint in the tort suit against Pipher did not allege that Wood "unintentionally caused" McFadden's death; on the contrary, that complaint alleged that he intentionally killed her. At the same time, however, that complaint, by alleging that Pipher's acts of negligence proximately caused Bernine McFadden's death, did in essence allege that Pipher "unintentionally caused" her death. Therefore, according to the complaint, McFadden's death was not an accident from Wood's perspective but was an accident from Pipher's perspective.

Under Pennsylvania law, if a term in an insurance policy is ambiguous "and if the insurer wrote the policy or is in a stronger bargaining position than the insured, the ambiguity is generally resolved in favor of the insured and against the insurer." Eastern Associated Coal Corp. v. Aetna Cas. & Sur. Co., 632 F.2d 1068, 1075 (3d Cir. 1980). Here, the policy provision providing coverage for damages

12

resulting from an "accident" is ambiguous because the provision does not specify the perspective from which the accidental or non-accidental nature of the result is to be judged. Therefore, if I were free to exercise my independent judgment as to how the policy provision should be interpreted in light of the Pennsylvania rule that ambiguities in insurance policies should generally be construed against the insurer, I would hold that the damages sought in the tort suit against Pipher resulted from an "accident" as that term is used in her policy.

Because this is a diversity action, however, we are not free to exercise our independent judgment but must instead predict how the Supreme Court of Pennsylvania would rule. The district court in this case viewed Gene's Restaurant, Inc. v. Nationwide Ins. Co., 548 A.2d 246 (Pa. 1988), as controlling, but I believe that that interpretation is probably erroneous. In Gene's Restaurant, Patricia Aschenback and her husband sued the restaurant, alleging that a restaurant employee, acting within the scope of his employment, had committed an assault and battery upon her and that the restaurant was liable for her resulting injuries.1 The restaurant's insurance policy contained language similar to that in the policy at issue in this case. Holding, in a tersely worded opinion, that the insurer was not obligated to defend the suit against the restaurant, the Supreme Court of Pennsylvania wrote:

> The willful and malicious assault alleged in the complaint is not an accident but rather is an intentional tort. As such, it is not covered by the policy and, therefore, the insurer owed no duty to defend.

548 A.2d at 247.

It seems best to interpret the decision in Gene's Restaurant as taking the view that, according to the allegations in the Aschenbacks' complaint, the restaurant, acting through its employee, did not accidentally cause Patricia Aschenback's injuries but rather intentionally

_____

1. See Gene's Restaurant Inc. v. Nationwide Insurance Co., 95 E.D. Appeal Docket 1987, Record at 14a, PP3 & 4 (reproducing plaintiff 's Complaint in Trespass).

13

caused them by committing an assault and battery. Thus, Gene's Restaurant, contrary to the majority's understanding, is not a case in which an insured was sued for damages resulting from a third party's intentional acts. Instead, Gene's Restaurant is a case in which an insured was sued for damages resulting from what were, in legal effect, its own intentional acts. Interpreted in this way, Gene's Restaurant does not decide the question presented in this appeal.

By contrast, the Superior Court's decision in Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208 (Pa. Super. Ct. 1994), involved a situation materially indistinguishable from the one presented here. Donna Lee Smith sued Dagwood's Pub and its proprietors, alleging that another pub patron, William Hopania, had "violently attacked Smith with a broken beer bottle, striking her in the face." 639 A.2d at 1209. "Smith's complaint also asserted that her injuries were caused by Dagwood's Pub's carelessness, recklessness, negligence and/or gross and wanton disregard." Id. Holding that Smith's complaint did not seek to recover for an "accident" within the meaning of the pub's insurance policy, the Superior Court wrote:

> Smith avers that "the injuries and damages she sustained . . . occurred as [a result of] the intentional, willful and purposeful acts of William Hopania." Smith does not allege that the incident in question amounted to an "accident," nor does she claim that her injuries were incurred as a result of any negligence by Hopania. In light of these allegations and the Supreme Court's decision in Gene's Restaurant, . . . we find that Smith's claims against Dagwood's Pub arising out of Hopania's assault, do not constitute an "occurrence" as defined by the instant policy.

Id. at 1210-11.

If we followed this decision, we would be compelled to affirm here, and in diversity cases we are instructed to heed the decisions of a state's intermediate appellate court unless we are convinced by "other persuasive data" that the state's highest court would reach a different result. West v. American Telephone & Telegraph Co., 311 U.S. 243 (1940).

14

But although the question is debatable, I conclude in the
end that the Supreme Court of Pennsylvania would not
follow the Superior Court's holding. For the reasons already
explained, I do not think that the state supreme court
would view Gene's Restaurant as dispositive, and I believe
that the state supreme court would find the term"accident"
as used in the policy to be ambiguous and would thus
construe it against the insurer.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15