FILED
United States Court of Appeals
Tenth Circuit

September 12, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN F. MULLIN; DIANE L.
MULLIN,

      Plaintiffs - Appellees,

    v.

TRAVELERS INDEMNITY
COMPANY OF CONNECTICUT, a
Delaware Corporation,

      Defendant - Appellant.

No. 07-4100

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:05-CV-971-TS)**

Michael W. Homer (Jesse C. Trentadue, with him on the briefs), of Suitter
Axland, Salt Lake City, Utah, for Defendant - Appellant.

Vincent C. Rampton, Jones, Waldo, Holbrook & McDonough, P.C., Salt Lake
City, Utah, for Plaintiffs - Appellees.

Before **TACHA**, **BRISCOE**, and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

    Travelers Indemnity Company of Connecticut insured High Mountain, LLC,

which managed two condominium units in Utah owned by John F. and Diane L.

Mullin. The Mullins sued High Mountain for renting the units for discounted rates without permission, theft of property from the condominiums owned by the Mullins, failure to forward rental income, and theft of property from a rental unit that the Mullins occupied. They obtained a default judgment against High Mountain, which then declared bankruptcy. The bankruptcy led the Mullins to bring this direct action against Travelers for a declaratory judgment that they are entitled to recover from Travelers the full amount owed on their judgment against High Mountain. *See* 28 U.S.C. § 1332 (diversity jurisdiction); Utah Code Ann. § 31A-22-201 (allowing direct action against insurers of bankrupt insureds). After the parties filed cross-motions for summary judgment, the district court ruled in favor of the Mullins.

On appeal Travelers argues that it is not obligated to pay the default judgment because (1) the judgment against High Mountain is for losses not covered by the Travelers insurance policy and (2) High Mountain's failure to provide prompt notification of the default judgment was prejudicial and bars recovery under the policy. We have jurisdiction under 28 U.S.C. § 1291 and reverse and remand. Travelers is entitled to summary judgment with respect to three of the alleged losses. The Mullins abandoned at oral argument their claim that the Travelers policy covers the loss from discounted rents. The failure to forward rental income is not a loss included within the policy coverage for loss of use of tangible property. And the theft from the condominiums owned by the

Mullins is not covered by the policy because it predated the policy coverage period. We agree with the Mullins, however, that the Travelers policy covered the theft—allegedly caused by High Mountain's negligence—from the condominium they occupied. But Travelers may still escape liability for that loss if recovery under the policy is barred by High Mountain's failure to give proper notice to Travelers. Although the district court granted the Mullins summary judgment on Travelers' claim of inadequate notice, we think that disputed facts precluded that judgment. We therefore remand for further proceedings on the issue.

## I.    BACKGROUND

The Mullins owned two rental condominiums in Park City, Utah, which High Mountain began managing for them in 2000. From October 1, 2002, until October 1, 2003, High Mountain had a general commercial liability policy with Travelers. The Mullins sent letters to High Mountain in late 2002 and throughout 2003 complaining of (1) the loss of $15,728.28 in rental income because High Mountain had discounted the rents for the Mullins' units without their permission; (2) High Mountain's failure to forward $32,989.36 in rental income to the Mullins; (3) the theft of property valued at $1,306 from their two rental condominiums; and (4) the theft of property valued at $70,000 from a rental unit where they were staying in December 2002 because their own units had been rented.

On October 28, 2003, the Mullins filed suit against High Mountain in Utah federal district court, alleging that High Mountain was liable for the above-mentioned losses of rental income and thefts. They claimed that High Mountain had breached its contract by allowing the thefts to happen, discounting the rental rate, and failing to forward rents; that its agents and employees had stolen at least $71,300 of the Mullins' property; that it was liable for gross negligence in permitting the various thefts to occur; and that High Mountain had been unjustly enriched by retaining the Mullins' property.

After High Mountain failed to file a timely answer, default judgment was entered in the Mullins' favor on January 8, 2004, and they were awarded $120,017.64 plus interest, attorney fees, and costs. High Mountain filed an answer to the complaint four days later, on January 12, and filed for bankruptcy in February.

Travelers had begun representing High Mountain by April 2004, but it did not file a motion for relief from judgment until November 23, 2004. The district court denied the motion. It noted that the Mullins would be prejudiced by reopening the case because High Mountain had dismissed its employees and ceased doing business, making it almost impossible to reconstruct what had happened. In addition, the court found no excuse for High Mountain's delay in seeking relief. It indicated, however, that it would have set aside the default

judgment if High Mountain had so moved when it filed its answer on January 12. We affirmed the denial of relief on June 2, 2006.

In the meantime, on November 28, 2005, the Mullins had filed the suit before us in the United States District Court for the District of Utah.[1] The Mullins filed a motion for summary judgment in which they argued that Travelers had to pay the entire amount of the default judgment. Travelers filed a motion for summary judgment as well, in which it argued that none of the losses was covered by High Mountain's insurance policy and that, in any event, it was freed of liability by High Mountain's failure to provide it with timely notice regarding the Mullins' suit.

The district court granted summary judgment in favor of the Mullins and denied Travelers' motion. It ruled that all the Mullins' losses were covered by High Mountain's policy with Travelers, and it held that Travelers was not prejudiced by any failure of High Mountain to provide notice because Travelers "accepted tender of its insured's defense, effective January 15, 2004," in ample time to file a successful motion for relief from the default judgment. *Mullins v. Travelers*, No. 2:05-CV-971 TS, Mem. Decision & Order Granting Pls.' Mot. Summ. J. (D. Utah Mar. 26, 2007) (Opinion) at 8. The court entered judgment in

---

[1]The Mullins initially sued "St. Paul Travelers Insurance Company," but Travelers was later substituted as the defendant.

the amount of $134,312.37, which was the amount of the Mullins' judgment against High Mountain, plus costs, fees, and interest.

## II. DISCUSSION

For Travelers to be liable for the default judgment, it is necessary that (1) the Mullins "obtained, but w[ere] unable to satisfy, a judgment against" High Mountain; and (2) "the damages arising from" High Mountain's actions "were covered by the [Travelers] policy." *Speros v. Fricke*, 98 P.3d 28, 34 (Utah 2004). Travelers does not contest that the Mullins obtained a judgment against High Mountain that they were unable to satisfy, so we need consider only the second issue, whether High Mountain's alleged wrongdoings were covered by the Travelers policy.

### A. Standard of Review

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonprevailing party. *Navair, Inc. v. IFR Americas, Inc.*, 519 F.3d 1131, 1137 (10th Cir. 2008). Summary judgment is appropriate if "there is no genuine dispute over any material fact, and a party is entitled to prevail as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(c). Because the parties' arguments rely on Utah law, we will assume that Utah law governs. *See St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 703 (10th Cir. 2002) (assuming that Oklahoma law applies because parties assumed that it did). When the Utah Supreme Court has not addressed "specific issues

-6-

raised in this appeal, . . . we must predict how that court would rule." *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1142 (10th Cir. 2008). We consider each alleged loss in turn.

### B. Unpaid and Discounted Rent

The Mullins argued below that the property-damage provision in the Travelers policy covered High Mountain's liability to the Mullins arising from renting their units at a discount and failing to forward rental income received by High Mountain on the Mullins' units. At oral argument the Mullins explicitly abandoned their claim with respect to the discounted rentals, so we need not address it.

To assess the Mullins' claim based on failure to forward rental income, we begin with the pertinent policy language. The Travelers policy covers only "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Aplee. Supp. App. at 757 (Travelers Prop. Cas. Policy No. I-660-303C2211-TCT-02 (Policy) § I.1.a). The policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Policy § V.15.a–b.  The Mullins do not claim that paragraph (a) provides

coverage.  The issue, therefore, is whether the Mullins suffered a "[l]oss of use of

tangible property that [was] not physically injured" when High Mountain did not

forward the rental payments to them.  The Mullins contend that the "rental dollars

due [them] . . . constitute tangible property."  Aplee. Br. at 16 (internal quotation

marks omitted).  We think not.

> The Mullins' Rental Management Agreement with High Mountain states:
>
> [High Mountain] will provide a monthly accounting to the [Mullins]
> which reflects all adjusted gross rental revenue, adjustments thereto
> and expenses earned and incurred by the individual UNIT.  This
> accounting will be provided no later than 30 days after the end of
> each month.  The net rental income shall be mailed to the [Mullins]
> with the monthly accounting.  [High Mountain] may use advance
> deposit funds obtained in connection with any unit as working capital
> for its operations and to pay all expenses incurred with regard to the
> UNIT(S).

Aplt. App. Vol. 1 at 69 (Rental Agreement).  Thus, High Mountain was not

supposed to send the Mullins any tangible items (cash, checks, or the like) that it

received.  Rather, it would collect (and presumably deposit) rental income and

send the Mullins the net rental income (presumably a check) after High

Mountain's fees and expenses were deducted.  High Mountain's misconduct was

not a refusal to deliver tangible property, but simply a failure to pay a debt.

There was no "property damage" within the meaning of the policy, because the

"money" not forwarded to the Mullins was not tangible property.  *See Johnson v.*

*Amica Mut. Ins. Co.*, 733 A.2d 977, 979 (Me. 1999) (bank-account funds are not

tangible property, but merely represent value; therefore, conversion of bank-account funds was not a loss of use of tangible property); *Mack v. Nationwide Mut. Fire Ins. Co.*, 517 S.E.2d 839, 840 (Ga. Ct. App. 1999) (money is tangible property "only when there is a matter relating to specific coins or notes"); *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex. App. 1991) ("'the loss of use of tangible property'" does not include "the loss of initial investments, subscription funds, and profits"); *Travelers Indem. Co. v. State*, 680 P.2d 1255, 1256–57 (Ariz. Ct. App. 1984) (neither investment certificates nor deposit of money in a bank is tangible property); *cf. Capitol Indem. Corp. v. Wright*, 341 F. Supp. 2d 1152, 1153–54, 1159 (D. Nev. 2004) (when employee of nursing home stole over $450,000 from nursing home resident, the money was property that the victim lost the use of because it was "hard currency"—which the court inferred from the fact that the victim signed for the money at a bank). *See generally* 2 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies & Insured § 11:1 at 11-3 to 11-4 (5th ed. 2007); ("property that does not have intrinsic value, but rather is merely representative or evidence of value," such as a stock certificate, is intangible property, not tangible property); *id.* at 11-5 ("[A]lthough 'the destruction of a stack of currency could certainly be considered a destruction of tangible property,' the destruction or loss of a check or investment certificate is not . . . .").

It seems obvious to us that failure to pay money owed as a debt is not the deprivation of use of tangible property. And in light of the authority supporting that proposition, we are comfortable that the Utah Supreme Court would adopt the same view. *See Pompa*, 520 F.3d at 1142 (in diversity case we must predict how state's highest court would rule). Accordingly, High Mountain's liability to the Mullins for failure to forward rent payments was not covered by the Travelers policy, and Travelers is entitled to summary judgment on this claim.

### C. Theft of Property Valued at $1,300

Travelers argues that the theft of $1,300 in property was not covered by its policy because the record does not show that it occurred within the policy period of October 1, 2002, to October 1, 2003. Travelers is correct that the Mullins bore the burden to prove that the loss occurred within the policy period, *see Speros*, 98 P.3d at 34, and that they failed to satisfy that burden. The Mullins' complaint against High Mountain broadly states that the theft of the $1,300 in property occurred "[d]uring the calendar year 2002." Aplt. App. Vol. 1 at 59. But a letter to High Mountain from Mr. Mullin on October 23, 2002, states that certain property (later valued at $1,306) was discovered missing from their condominiums "[o]ver the Labor Day holiday." Aplt. App. Vol. 1 at 160. And a letter to High Mountain by the Mullins' counsel on September 23, 2003, states: "[The] Mullins have lost other items from their units incident to High Mountain's maintenance thereof *prior to October of 2002*. These items, itemized on the

-10-

enclosed list, total $1,306." Aplt. App. Vol. 1 at 91 (emphasis added).  No evidence in the record supports a different date for the theft.  Not only does the record not support summary judgment in favor of the Mullins on this $1,300 claim, but it shows that Travelers was entitled to summary judgment.

### D.     Theft of Property Valued at $70,000

The Mullins' complaint against High Mountain alleged that in December 2002 property of theirs worth $70,000 was stolen by High Mountain employees from a condominium where the Mullins were staying.  Travelers argues that the theft is not covered by the policy.  It points out that (1) the policy excludes coverage for damage to "personal property in the care, custody or control of the insured," Aplt. Br. 25 (internal quotation marks omitted); (2) it is liable under the policy only for losses that are the result of an "occurrence," that is, an accident, *id.* at 23; and (3) the policy excludes coverage for property damage "intended from the standpoint of the insured," *id.* (internal quotation marks omitted).  In our view, however, none of these policy provisions assists Travelers in this case.

First, we consider the policy exclusion for damage to "[p]ersonal property in the care, custody or control of the insured."  Policy § I.2.j.(4).  The property at issue here was personal property of the Mullins that they left in the condominium they were occupying while their own condominiums were rented out.  High

Mountain's care, custody, or control would have to derive from its management of the condominiums.

The Travelers policy does not define "care, custody, or control." According to one leading treatise, however, to determine whether property is under the "care, custody, or control" of an insured, courts consider

> whether the property is realty or personalty, the location, size, and other characteristics of the property, and the insured's relationship to the property, including the insured's duties with respect to the property, nature and extent of the insured's control over the property, and any interest the insured may have in the property.

9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 126:22 (3d ed. 2007) (footnote omitted). "The great majority of the cases," states the treatise, "support the view that property in the care, custody, or control of the insured refers to possessory handling of the property as distinguished from proprietary control." *Id.* Thus, "property stored on the insured's premises" usually qualifies, but not when "the insured lets locked storage space to a third party." *Id.*

We infer that a landlord who has no special responsibility toward the belongings of a tenant does not have "care, custody, or control" of the tenant's property on the rented premises. This common-sense view of the policy language undermines Travelers' argument. High Mountain appears to have been merely the landlord's agent for living quarters occupied by the Mullins. Absent additional evidence of High Mountain's control of the premises or responsibility for an occupant's property, which Travelers has not provided, the only reasonable

-12-

conclusion is that High Mountain did not have the possessory interest in the Mullins' property necessary to establish the exclusion. Although there is no controlling Utah law in point, we see no reason to believe that the Utah Supreme Court would adopt a peculiar view of the policy language. *See Overson v. U.S. Fid. & Guar. Co.*, 587 P.2d 149, 150 (Utah 1978) (the phrase "care, custody, or control" is "clear and unambiguous" in most contexts).

Second, the Travelers policy "applies to . . . 'property damage' only if . . . [it] is caused by an 'occurrence.'" Policy § I.1.b. The policy defines *occurrence* as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* § V.12. We reject Travelers' contention that this limitation bars recovery for the December 2002 theft. Although the Mullins' complaint against High Mountain alleges intentional theft (for which High Mountain was allegedly liable under the doctrine of respondeat superior), it also alleges that High Mountain was grossly negligent for "(a) failing to secure the Rental Unit and the Condominium Units through re-keying following a prior burglary thereof; (b) making keys to the Units available to third parties; and/or (c) failing to supervise personnel entering or leaving the Units." Aplt. App. Vol. 1 at 62–63.

Ordinarily, the intentional acts of a third party do not prevent a loss from being an "accident" if the insured's negligence was also a cause. For example, in *Nationwide Mutual Fire Insurance Co. v. Pipher*, 140 F.3d 222, 225–26 (3d. Cir.

-13-

1998), Ms. Pipher's tenant was murdered by a man whom Ms. Pipher had hired to paint the apartment, *id.* at 223–24. Ms. Pipher's insurance company sought a declaratory judgment that it had no duty to defend her because the killing was intentional, and thus did not result from an "accident." *Id.* at 224. But the Third Circuit held that there was policy coverage because the complaint alleged that Ms. Pipher had been negligent in failing to reinstall apartment doors, failing to provide safe premises, and hiring the painter. *Id.* at 225. The court said, "The rule seems to be well-settled . . . that it is the intentional conduct of the *insured* which precludes coverage, not the acts of third parties." *Id.* at 226. It also noted that "many courts have expressly held in favor of the insured in coverage disputes involving the intentional conduct of third parties." *Id.*; *see also id.* at 228–29 (Alito, J., concurring). We are confident that Utah would concur with this prevailing view.

Third, the Travelers policy has a provision entitled "Expected or Intended Injury," which excludes coverage for "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. . . ." Policy § I.2.a. But, as just discussed, the Mullins had a claim against High Mountain for unintentional conduct (gross negligence) that caused the theft. It appears that Travelers does not rely on this exclusion with respect to the negligence claim. In any event, we do not see, and Travelers does not explain, how the exclusion would apply to that claim. *See Pipher*, 140 F.3d at 227 (explaining meaning of

such an exclusion).  To escape liability with respect to that claim, Travelers must therefore rely on its failure-of-notice argument.

### E.    Failure to Notify Travelers of Mullins' Lawsuit

Travelers' final argument is that it was relieved of any liability under the policy because it was prejudiced by High Mountain's failure to provide prompt notice regarding the Mullins' lawsuit against High Mountain—in particular, notice of the default judgment.  Because this argument is fact dependent, we begin by reciting what the record reveals.

The Mullins filed suit against High Mountain on October 28, 2003.  Default judgment was entered in their favor on January 8, 2004.  High Mountain filed its answer to the complaint four days later and declared bankruptcy the following month.  Travelers admits that it had begun representing High Mountain by April 2004, but it did not file a motion to set aside the default judgment until November 23, 2004.  The motion was denied, and we affirmed on appeal.

Travelers' agent received notice of the Mullins' claim against High Mountain on January 6, 2004, and Travelers acknowledged receipt of the summons and complaint in a letter to High Mountain on January 15, 2004. (Although the Mullins contend that Travelers had earlier notice of the claim, they rely on an affidavit from their attorney that provides only hearsay evidence—a statement by High Mountain's attorney—that Travelers knew of the claim.  Such hearsay cannot be considered on a motion for summary judgment.  *See Riggs v.*

*AirTran Airways, Inc.*, 497 F.3d 1108, 1121 (10th Cir. 2007).) The Mullins asserted below, and the district court agreed, that Travelers announced its decision to defend High Mountain in the January 15 letter. The language of the letter does not support this proposition. Travelers wrote:

> The Travelers Indemnity Company of Connecticut ("Travelers") has received the Summons and Complaint John F. Mullin and Diane L. Mullin have filed against High Mountain, LLC dba High Mountain Properties ("Mountain Properties") in the United States District Court, District of Utah, Central Division (Civil No. 2:03 CV00952 DS).
>
> Travelers is conducting an investigation to determine what our rights, duties and obligations are to Mountain Propert[ies] under the policy of insurance, number 660-303C2211-TCT from October 1, 2002 to October 1, 2003.
>
> This investigation is being done under a reservation of rights which should not be construed as an admission of coverage or liability. We do not waive any of our rights under the policy of insurance issued to Mountain Properties.
>
> We understand you retained counsel who has filed a response on Mountain Properties' behalf.
>
> We will advise you of our coverage position once we have had an opportunity to complete our investigation. Should you have any questions, please contact me at . . . .

Aplt. App. Vol. 1 at 261. This letter appears to communicate a reservation of rights, not a tender of defense. Indeed, it notes that High Mountain already has retained counsel to answer the complaint.

The Travelers policy requires that High Mountain "[i]mmediately send [Travelers] copies of any demands, notices, summonses or legal papers received

-16-

in connection with the claim or 'suit.'" Policy § IV.2.c.(1). Travelers contends that High Mountain failed in this regard by not providing notice of the suit until the default was entered and never providing notice of the default or the default judgment. It asserts that it did not learn of the default or default judgment until advised by the Mullins' attorney in April 2004, three months after judgment was entered. Under Utah law, however, failure to provide notice to an insurer "does not bar recovery under the policy if the insurer fails to show it was prejudiced by the failure." Utah Code Ann. § 31A-21-312(2).

In our view, whether Travelers was prejudiced by lack of notice from High Mountain could depend on a variety of factors. To avoid doing the parties' work for them, we choose not to canvass the possibilities. But the district court apparently found one fact to be dispositive. It said that Travelers "accepted tender of its insured's defense, effective January 15, 2004." Opinion at 8. And it then concluded that Travelers "had actual notice in time to have affected the outcome of the case," *id.*, apparently relying on the statement by the district judge in that case that he would have granted a motion for relief from the default judgment if the motion had been filed with High Mountain's answer on January 12, 2004. We cannot affirm summary judgment for the Mullins on this basis. The district court's statement that Travelers "accepted the tender of its insured's defense" on January 15, 2004, is, at the least, highly questionable. Accordingly, we remand to the district court for further proceedings regarding

-17-

whether Travelers was substantially prejudiced by failure of timely notice from High Mountain.

### III. CONCLUSION

We REVERSE the district court's grant of summary judgment. We REMAND to the district court with instructions to enter summary judgment in favor of Travelers on all claims except the claim based on the December 2002 theft of the Mullins' property. With respect to that claim, we REMAND for further proceedings regarding whether Travelers was prejudiced by untimely notice from High Mountain concerning the Mullins' lawsuit against High Mountain.