FILED
United States Court of Appeals
Tenth Circuit

October 27, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

TRANS-WESTERN PETROLEUM,
INC., a Colorado corporation,

      Plaintiff-Counter-Defendant-
      Appellee/Cross-Appellant,

v.

UNITED STATES GYPSUM CO., an
Illinois corporation,

      Defendant,

and

CHEVRON U.S.A., INC., a Pennsylvania
corporation; WOLVERINE GAS AND
OIL CORP., a Michigan corporation;
WINN EXPLORATION CO., INC., a
Texas corporation; BILLINGSLEY
INTERESTS, LTD., a Texas limited
partnership,

      Defendants-Counter-
      Claimants-Appellants/Cross-
      Appellees.

No. 08-4120 & 08-4121

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:06-CV-00801-TS-PMW)

_____

Jack R. Luellen, (Katherine W. Wittenberg and Frederick M. MacDonald with him on the
briefs), of Beatty & Wozniak, P.C., Denver, Colorado, for Appellants/Cross-Appellees.

Stephen K. Christiansen, (Thomas W. Clawson and Sam Meziani with him on the brief), of Van Cott, Bagley, Cornwall McCarthy, Salt Lake City, Utah, for the Appellee/Cross-Appellant.

---

Before **HARTZ**, **HOLLOWAY**, and **McKAY**, Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

---

## I. INTRODUCTION

This case involves a dispute over which of two energy companies, Trans-Western Petroleum, Inc., or Wolverine Gas and Oil Corp., currently holds a valid oil and gas lease on a portion of land in Utah. Trans-Western asserts that it has a valid lease with a lease term beginning on August 17, 2004. Wolverine acknowledges that the primary term of its lease expired on August 17, 2004. However, Wolverine asserts that its placement of the lands covered by the lease into a "unit"–a group of separately leased lands covering a common supply of oil or gas–has extended the term of its lease.

Both parties filed proceedings seeking declaratory judgments. The district judge held that Wolverine's lease permitted the inclusion of the lease lands in an exploratory unit. However, the district judge held that the unit's production allocation scheme failed to meet the unitization requirements of the lease and therefore the lease had expired on August 17, 2004.[1]

---

[1]The district judge's decision was announced in an unreported Memorandum Decision. The district judge's conclusion stated: "Based on the undisputed facts, the Court finds that Plaintiff Trans-Western is entitled to judgment as a matter of law that the

In appeal No. 08-4120, Wolverine appeals the district judge's decision that the unit's production allocation scheme failed to meet the unitization requirements of Wolverine's lease. And in appeal No. 08-4121, Trans-Western appeals the district judge's decision that Wolverine's lease permits the inclusion of the lease lands in an exploratory unit.

Having appellate jurisdiction under 28 U.S.C. § 1291, we hold that the production allocation scheme of the unit fails to meet the unambiguous requirements of Wolverine's lease, and that the lease expired by its terms on August 17, 2004. Accordingly, we **AFFIRM** in No. 08-4120, and **DISMISS** No. 08-4121 as moot.

## II. BACKGROUND

Trans-Western Petroleum, Inc., brought a declaratory judgment action against Wolverine Gas and Oil Corporation, United States Gypsum Company, Dale Armstrong, Chevron U.S.A., Inc., Winn Exploration Co., Inc., Larry Billingsley, and Billingsley Interests, Ltd. Trans-Western sought a declaration that its oil and gas lease covering some land in Utah with a term beginning on August 17, 2004, was valid, and that an oil and gas lease held by Wolverine and Winn over the same land (hereinafter referred to as Wolverine's lease) had expired. I Jt. App. 0046, 0050, 0052–53, 0068 (Trans-Western Petroleum, Inc.'s Amended Complaint). Wolverine and Winn then filed a counter-claim seeking a declaration that their lease (the Wolverine lease) was still in effect and that Trans-Western's lease was

---

lease expired by its terms. The Court also finds that Defendants are entitled to judgment as a matter of law that exploratory drilling was anticipated by the Armstrong Lease."
*Trans-Western Petrol., Inc. v. Wolverine Gas & Oil Corp., et al.*, No. 2:06-CV-801-TS, 2007 WL 4270496, at *4 (D. Utah Dec. 3, 2007).

invalid.  *Id.* at 0076, 0090–92 (Counter-Claim of Wolverine Gas and Oil Corporation and Winn Exploration Co., Inc.).

The parties stipulated to the following relevant facts:  U. S. Gypsum was the owner of the oil and gas underlying some 1720 acres of land in Sevier County, Utah.  Wolverine and Winn are successor lessees under an oil and gas lease granted by U.S. Gypsum Co. over a portion of such land in Utah.  *Id.* at 0191–92 (Stipulated Statement of Facts).  The primary term of the Wolverine-Winn lease was to end on August 17, 2004.  *Id.* at 0192.

Paragraph 9 of Wolverine's lease permitted the placement of the lands covered by that lease into a "unit" in certain circumstances.[2]  In relevant part, Paragraph 9 states:

> In connection with operations for the production of oil and gas or either of them, Lessee may at any time or times pool or unitize this lease . . . with other lands and leases in the same area or field so as to constitute a unit or units whenever, in Lessee's judgment, necessary or advisable to comply with a law, rule, order or regulation of a governmental authority having jurisdiction, to reduce or prevent economic waste, to protect correlative rights, or to promote, encourage or accomplish the conservation of natural resources, by filing for record an instrument so declaring subject to the following: . . . (b) Units formed to accomplish a cycling, pressure maintenance, repressuring or secondary recovery program, or any other cooperative or unit plan of development or operation involving multiple wells must be approved by the governmental authority having jurisdiction and shall allocate to the portion of this lease included in any such unit a fractional part of production from any part of such unit on one of the following bases: (I) the ratio between the quantity of recoverable production allocable to the portion of this lease included in such unit and the total of all recoverable production allocable to such unit; or (ii) such other basis as may be approved by the governmental authority having jurisdiction thereof. . . . Upon production from any part of any such unit, Lessor herein shall be entitled to the royalties provided for in

---

[2]A "unit" is a combination of the land covered by an oil and gas lease with other land to develop the underlying oil and gas.  *See* 4 EUGENE KUNTZ, A TREATISE ON THE LAW OF OIL AND GAS § 48.3(a)(1) (1990).

-4-

this lease on only that fractional part of unit production allocated to that portion of this lease included in such unit. Operations upon any such unit or projected to any part of any such unit from an off-unit drillsite or production from any part of such unit shall be treated and considered for all purposes of this lease, except payment of royalties, as operations upon or production from this lease.

*Id.* at 0192–94.

The United States Bureau of Land Management (BLM) is the "governmental authority having jurisdiction" under Paragraph 9 of Wolverine's lease. *Id.* at 0194. On July 28, 2003, the BLM approved the creation of the "Wolverine Unit," which included the lands under Wolverine's lease and U.S. government land. *Id.* at 0194–95.

The BLM also approved a unit agreement to govern the Wolverine Unit. *Id.* at 0195. Under that agreement, the various lands within the Wolverine Unit may be included in a "participating area" if those lands are "reasonably proved to be productive of unitized substances in paying quantities." *Id.* at 0240 (Wolverine Unit Agreement (Incorporated into Stipulated Statement of Facts)). Production in the unit is then to be allocated under the agreement as follows:

> All unitized substances produced from a participating area established under this agreement . . . shall be deemed to be produced equally on an acreage basis from the several tracts of unitized land and unleased Federal land, if any, included in the participating area established for such production. Each such tract shall have allocated to it such percentage of said production as the number of acres of such tract included in said participating area bears to the total acres of unitized land and unleased Federal land, if any, included in said participating area.

*Id.* at 0242–43.

Wolverine and Winn filed a motion for partial summary judgment. *Id.* at 0273

(Motion for Partial Summary Judgment by Wolverine Gas and Oil Corporation and Winn Exploration Co., Inc.). They argued that the Wolverine lease unambiguously permitted the commitment of the Wolverine lease lands to the Wolverine Unit; therefore, that lease was still in effect. *See id.* at 0285, 0288 (Memorandum in Support of Motion for Partial Summary Judgment by Wolverine Gas and Oil Corporation and Winn Exploration Co., Inc.).

Trans-Western then filed its own motion for partial summary judgment. II Jt. App. 0301–03 (Trans-Western Petroleum, Inc.'s Motion for Partial Summary Judgment). Trans-Western argued that the unambiguous language of the Wolverine lease prohibited the lands it covered from being committed to the Wolverine Unit. *Id.* at 0531–33 (Hearing on Cross-Motions for Partial Summary Judgment). Therefore, Trans-Western argued, the Wolverine lease expired at the end of its primary term on August 17, 2004. *Id.* at 0303 (Trans-Western Petroleum, Inc.'s Motion for Partial Summary Judgment). Alternatively, Trans-Western argued that the Wolverine Unit was created to explore for oil and gas, and because Wolverine's lease prohibited unitization for that purpose, Wolverine's lease expired on August 17, 2004. *Id.* at 0302–03.

Relying on the parties' stipulated facts, the district judge held that Wolverine's lease did permit unitization for exploratory purposes. *Id.* at 0466, 0470 (District Judge's Memorandum Decision Granting in Part and Denying in Part Cross-Motions for Summary Judgment). However, the district judge explained that Wolverine's lease required that Wolverine be allocated a fractional share of production from any part of the Wolverine Unit, and the unit agreement failed to so require. *Id.* at 0469. Therefore, Wolverine's lease

prohibited its commitment to the Wolverine Unit and it had expired by its terms on August 17, 2004. *Id.* at 0469. These appeals followed.

### III. DISCUSSION

The appellants (hereinafter referred to as "Wolverine") assert that the district judge erroneously construed its lease as prohibiting commitment of the Wolverine lease lands to the Wolverine Unit. We disagree.

We review a summary judgment decision *de novo*, viewing the evidence in the light most favorable to the party opposing summary judgment. *Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1108 (10th Cir. 2009). Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. *Id.*; *see also* Fed. R. Civ. P. 56(c).

The parties' arguments rely on Utah law; therefore, we will assume that Utah law applies. *See Mullin v. Travelers Indem. Co.*, 541 F.3d 1219, 1222 (10th Cir. 2008) ("Because the parties' arguments rely on Utah law, we will assume that Utah law governs."). Utah courts apply the general principles governing the interpretation of contracts to documents conveying mineral interests. *Heiner v. S.J. Groves & Sons Co.*, 790 P.2d 107, 110 (Utah Ct. App. 1990). If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law. *Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 975 (Utah 2009).

A contractual term or provision is ambiguous if it is capable of more than one

reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies. *Daines v. Vincent*, 190 P.3d 1269, 1275 (Utah 2008). Contractual ambiguity can occur in two contexts: (1) facial ambiguity with regard to the contractual language, and (2) ambiguity with regard to the intent of the contracting parties. *Id.* at 1275–76. Absent facial ambiguity, the parties' intentions must be determined solely from the contract language. *Id.* at 1279.

A two-step process answers the legal question of whether a contract is facially ambiguous. *Id.* at 1276. First, a judge reviews extrinsic evidence offered to demonstrate that there is in fact an ambiguity. *Id.* at 1276–77. Second, a finding of ambiguity is justified only if the language of the contract reasonably supports the competing interpretations. *Id.* at 1277. This two-step process provides for rare instances where contractual terms are subject to alternative interpretations based on usage. *Id.* at 1277 n.5. Here, we first explore the language of Wolverine's lease, and then analyze whether the lease's language reasonably supports Wolverine's interpretation.

Paragraph 9 of Wolverine's lease, known as a unitization clause, governs Wolverine's power to unitize the lands covered by Wolverine's lease. *See* 4 KUNTZ, *supra* note 1, § 48.3(a)(1) ("Despite the attitude that the pooling [or unitization] clause is to be liberally construed, each pooling [or unitization] clause must be carefully examined for specific provisions that restrict the power [and] prescribe the manner in which it may be exercised . . . ."). Paragraph 9 states in part:

> (b) Units . . . must be approved by the governmental authority having

jurisdiction and shall allocate to the portion of this lease included in any such unit a fractional part of production from any part of such unit on one of the following bases: (I) the ratio between the quantity of recoverable production allocable to the portion of this lease included in such unit and the total of all recoverable production allocable to such unit; or (ii) such other basis as may be approved by the governmental authority having jurisdiction thereof.

The parties agree that if commitment of Wolverine's lease to the Wolverine Unit is authorized, it is authorized under Paragraph 9(b)(ii). Moreover, they stipulated that the Wolverine Unit was approved by the "governmental authority having jurisdiction," i.e., the Bureau of Land Management (BLM). Therefore, commitment of the Wolverine lease lands to the Wolverine Unit is authorized if the Wolverine Unit "allocate[s] to [Wolverine's lease] a fractional part of production from any part of [the Wolverine Unit] on" a "basis . . . approved by the governmental authority having jurisdiction thereof."

The Wolverine Unit Agreement divides the Wolverine Unit into different "participating areas." Production within the Wolverine Unit is then allocated as follows:

> [Each tract included in the participating area] shall have allocated to it such percentage of [production from the participating area] as the number of acres of such tract included in said participating area bears to the total acres of unitized land and unleased Federal land . . . included in said participating area.

Therefore, if the lands covered by Wolverine's lease are outside a producing participating area, they will be denied any allocation of production from that participating area. This arrangement appears to contradict Paragraph 9(b)'s requirement that a fractional part of production from *any* part of a unit be allocated to Wolverine's lease.

However, Wolverine asserts that Paragraph 9 of the lease unambiguously expresses the intent to defer to the "governmental authority having jurisdiction" to allocate production

from the Wolverine Unit. Therefore, Wolverine contends, Paragraph 9 authorizes the commitment of the lease to the Wolverine Unit because the BLM approved the unit's allocation method. In other words, Wolverine argues that "the parties intended that governmental approval of an allocation formula such as the participating area methodology would supersede the portion of Paragraph 9(b) providing that allocation 'shall' be made 'to the portion of [Wolverine's lease] included in any such unit a fractional part of production from any part of such unit.'" Appellants' Br. at 28–29.

We are unpersuaded that the lease unambiguously supports Wolverine's interpretation, or even that the language of the lease reasonably supports Wolverine's interpretation. *See Daines*, 190 P.3d at 1276–77 (holding that a finding of ambiguity is justified only if the language of the contract reasonably supports the competing interpretations). Paragraph 9(b) states that a unit must allocate to the portion of Wolverine's lease included in the unit "a fractional part of production from any part of [the] unit on one of the following bases: . . . (ii) such other basis as may be approved by the governmental authority having jurisdiction thereof." Paragraph 9(b)(ii) contemplates deference to "the government authority having jurisdiction." However, that deference concerns the choice of the basis used to allocate to the lease "a fractional part of production from any part of [the] unit." An intent to defer to a governmental approval of *any* method of allocation–such as the one here that fails to allocate to Wolverine's lease a fractional part of production from participating areas of which it is not a part–is absent from Paragraph 9.

The Wolverine Unit's allocation scheme directly contradicts the unambiguous

requirements of Paragraph 9(b) of Wolverine's lease.  Therefore, the lands covered by Wolverine's lease could not be placed within the Wolverine Unit, and consequently Wolverine's lease expired at the end of its primary term on August 17, 2004.

## IV.  CONCLUSION

The production allocation scheme of the Wolverine Unit fails to satisfy the unambiguous requirements of Wolverine's lease, and that lease expired at the end of its primary term on August 17, 2004.  Therefore, we **AFFIRM** in No. 08-4120. Moreover, because we have held that Wolverine's lease prohibits unitization here, it is unnecessary for us to address Trans-Western's alternative argument that the lease prohibits unitization into an exploratory unit such as the Wolverine Unit.  Therefore, we **DISMISS** Trans-Western's conditional cross-appeal in No. 08-4121 as moot.

IT IS SO ORDERED.