FILED
United States Court of Appeals
Tenth Circuit

**July 26, 2016**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

TRANS-WESTERN PETROLEUM,
INC., a Colorado corporation,

> Plaintiff - Appellant/Cross-
> Appellee,

v.

UNITED STATES GYPSUM
COMPANY, an Illinois corporation,

> Defendant - Appellee/Cross-
> Appellant.

No. 13-4012 and 13-4021

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:06-CV-00801-TS)**

---

Stephen K. Christiansen, (Sam Meziani and Kelley M. Marsden of Van Cott, Bagley, Cornwall & McCarthy, on the briefs), Salt Lake City, Utah, for Plaintiff - Appellant-Cross Appellee.

Matthew J. Ball (and Patricia W. Christensen of Parr, Brown, Gee & Loveless, P.C., on the briefs), Salt Lake City, Utah, for Defendant - Appellee/Cross Appellant.

---

Before **KELLY**, **LUCERO**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

This diversity case involves a 2004 oil and gas lease with a five-year term between Trans-Western Petroleum, Inc. ("Trans-Western") and United States Gypsum Co. ("USG"). In a prior appeal, we determined Trans-Western held a valid oil and gas lease. Trans-Western Petroleum, Inc. v. United States Gypsum Co., 584 F.3d 988 (10th Cir. 2009). Thereafter, the district court granted partial summary judgment in favor of Trans-Western, held a bench trial on damages and awarded Trans-Western nominal damages. Both parties appealed. Trans-Western appealed the district court's nominal damage award. USG cross-appealed the district court's denial of its Fed. R. Civ. P. 56(d) motion, grant of partial summary judgment in favor of Trans-Western, and nominal damages award.

After oral argument, we certified one question to the Utah Supreme Court: How should expectation damages be measured for the breach of an oil and gas lease? In light of the Utah Supreme Court's resolution of this question, we now affirm the district court's grant of partial summary judgment, and remand the case for a proper determination of the amount of damages. Our jurisdiction arises under 28 U.S.C. § 1291.

Background

USG owns the oil and gas underlying 1,700 acres of land in Sevier County, Utah. In 1995, USG entered into an oil and gas lease with Dale E. Armstrong ("Armstrong"), who subsequently assigned the lease to Wolverine Oil & Gas

Corp. ("Wolverine"). Aplt. App. 592. The Wolverine lease was extended to nine years, through August 17, 2004. Aplt. App. 592.

In 2004, Douglas Isern ("Isern"), the owner and sole officer of Trans-Western, heard rumors that Wolverine had discovered oil in the area. Aplt. App. 591, 593. After researching county records, Isern found the Armstrong lease and called USG, expressing interest in leasing the land upon expiration of the Wolverine assignment. Aplt. App. 593. Isern followed up by sending USG a proposed lease, with a term of five years beginning August 17, 2004 at $19/acre (or $32,680) along with the right of assignment. Aplt. App. 593-94. The proposed lease was accompanied by a draft in the amount of $32,680. Aplt. App. 594. On September 15, 2004, USG executed the lease. Aplt. App. 594.

Soon after, on October 1, 2004, both Trans-Western and USG received a letter from Wolverine protesting the recording of the lease. Wolverine claimed that its lease with Armstrong remained valid under pooling and unitization provisions contained in that lease. Aplt. App. 594. USG responded by rescinding the lease with Trans-Western both orally, through a phone conversation with Isern, and in writing, via a letter to Isern dated October 7, 2004. Aplt. App. 595. The value of Trans-Western's lease did not change during the three weeks from the date of its execution to the date of its rescission. Aplt. App. 595.

Two years later, in 2006, Trans-Western brought suit against Wolverine, seeking a declaratory judgment that Wolverine's lease with USG had expired on

August 17, 2004. Aplt. App. 595. The district court determined that the Wolverine lease had expired. Aplt. App. 595. It then granted the parties' stipulated joint motion for Rule 54(b) certification and stay. Aplt. App. 117. The district court was subsequently affirmed on appeal. Trans-Western Petroleum, Inc., 584 F.3d at 994. Thereafter, as part of their agreement, USG and Trans-Western executed a Ratification and Lease Extension of the August 17, 2004 lease for an extended primary term of five years beginning December 11, 2009. Aplt. App. 1301–1302.

Armed with the determination that the Wolverine lease was no longer in effect, in 2010, Trans-Western also filed its second amended complaint, seeking a declaratory judgment that its lease with USG was valid and damages for breach of contract and breach of the covenant of quiet enjoyment, among other claims. Aplt. App. 141, 147-49, 595. Trans-Western then moved for partial summary judgment, which USG opposed based on the theories of mutual or unilateral mistake of fact. Aplt. App. 231, 595. The district court granted partial summary judgment to Trans-Western, determining that USG had breached the lease but denied attorney's fees[1] due to disputed material facts on damages. Aplt. App. 237-38, 595; Trans-Western Petroleum, Inc. v. Wolverine Gas & Oil Corp., No.

---

[1] Trans-Western argues that it is due attorney's fees as consequential damages because it had to pursue third-party litigation against Wolverine. Aplt. App. 214-16.

-4-

2:06-cv-801-TS, 2011 WL 223734 (D. Utah Jan. 24, 2011).

During a bench trial on damages, Trans-Western contended that it was entitled to expectation damages for both breach of contract and breach of the covenant of quiet enjoyment because USG deprived it of the opportunity to assign the lease during its five-year term.[2] Aplt. App. 330-35, 596. According to Trans-Western, it would have assigned the lease in late 2007 or early 2008 for a minimum of $2,500 per acre (at least $4.3 million total) during the market's peak—and before the price dropped precipitously in 2009 after a dry hole was drilled. Aplt. App. 314, 338, 596.

USG contended, inter alia, that damages for the breach of an oil and gas lease, like any real property, are measured at the date of breach—which occurred on October 7, 2004, when USG notified Trans-Western of its rescission—and not pegged to a hypothetical sale at the market's peak. Aplt. App. 317, 596-97.

The district court rejected Trans-Western's damages theories, finding that Trans-Western was entitled only to nominal damages based on the value of the contract on the date of breach, which had not increased since the date of execution. Aplt. App. 597-602, 608. However, the district court noted that Utah's courts had yet to specifically address the calculation of damages involving an oil and gas lease.

_____

[2] Trans-Western also argued in the alternative that it was entitled to consequential damages. Aplt. App. 335-36, 602.

As noted, we certified the question of how expectation damages for the breach of an oil and gas lease should be measured to the Utah Supreme Court. Trans-Western Petroleum, Inc. v. United States Gypsum Co., 559 F. App'x 773 (10th Cir. 2014). The Utah Supreme Court determined that in the context of the present case

> we measure general damages as the difference between the contract price of the lease and the market value of the lease at the time of the breach. Consequential damages, on the other hand, are those that are reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made. And we measure consequential damages not by the value of the promised performance alone but by the gains such performance could produce for collateral reasons, or the loss that is produced by the absence of such performance.

Trans-Western Petroleum, Inc. v. United States Gypsum Co.,—P.3d—, 2016 WL 3369544 at *1 (Utah 2016) (internal citations and quotations omitted). The court also held that a trial court may exercise discretion and allow for the use of post-breach evidence to help establish and measure expectation damages. Id.

## Discussion

We begin with USG's cross-appeal on liability. USG argues that the district court should have granted its Fed. R. Civ. P. 56(d) motion and deferred ruling on USG's motion for partial summary judgment so that USG could conduct discovery. It further challenges the underlying grant of partial summary judgment.

-6-

A.      Denial of Rule 56(d) Motion

Rule 56(d) permits a court to defer considering a motion for summary judgment when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  We review the district court's denial of a Rule 56(d) motion for an abuse of discretion.  Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006).  Here, the district court determined that USG had a correct understanding of certain facts and constructive notice of others thereby allowing the case to be resolved as a matter of law on USG's defenses of mutual and unilateral mistake.  Trans-Western Petroleum, Inc., 2011 WL 223734 at *3-4.

Although discovery is the norm prior to granting summary judgment, a party's mere hope that discovery may yield further evidence is insufficient to defeat a summary judgment motion.  Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988);  Miller v. United States, 710 F.2d 656, 666 (10th Cir. 1983).  That said, summary judgment should not be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986).

USG contests the district court's denial of its Rule 56(d) motion for two reasons: (1) the district court disregarded its reasons for additional discovery and (2) the district court disregarded a scheduling order.

1.     District Court's Rejection of USG's Specified Reasons

In the district court, USG urged that extra time would allow it to discover evidence supporting its affirmative defense of unilateral mistake, specifically that Trans-Western was aware that USG was under a mistaken impression.  See Aplee. App. 32, 40.  On appeal, USG argues that discovery would have shown that there was no meeting of the minds due to a lack of consideration on Trans-Western's part.  Aplee. Br. at 37-38.  Without a meeting of the minds, USG argues the parties never created an enforceable contract.  This meeting of the minds argument in favor of additional time for discovery was not raised before the district court.  As a general rule, "a federal appellate court does not consider an issue not passed upon below."  In re Walker, 959 F.2d 894, 896 (10th Cir. 1992) (quoting Singleton v. Wulff, 428 U.S. 106, 120 (1976)).  USG argues that it preserved this argument for the purposes of appeal because there is "no material difference between the mistake defense USG sought to pursue below, and the 'meeting of the minds' defense USG has pursued on appeal."  Aplee. R. Br. at 12-13.  This is inaccurate.  Before forming an enforceable contract, there must be a meeting of the minds on the essential terms of the agreement.  See Zaccardi v. Zale Corp., 856 F.2d 1473, 1478 (10th Cir. 1988); Sackler v. Savin, 897 P.2d 1217, 1220 (Utah 1995).  On the other hand, mistake is raised as a defense after a contract has been formed.  See Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1184 (10th Cir. 2012); Workers Comp. Fund v. Utah Business Ins. Co., 296 P.3d

-8-

734, 741-42 (Utah 2013). Therefore, USG waived this argument and cannot raise it on appeal.

Even if we disregarded waiver, USG's specified reasons for a Rule 56(d) deferral do not satisfy the rule's requirements. When requesting a Rule 56(d) deferral,"the party filing the affidavit must show how additional time will enable him to rebut [the] movant's allegations of no genuine issue of fact." Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993) (quoting Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 (10th Cir. 1984)). USG's affidavit does not rise to this level as it did not dispute Trans-Western's Statement of Undisputed Material Facts. Aplt. App. 231. Instead, USG sought additional time to discover issues relating to Trans-Western's knowledge of various factors that presumably would aid in the development of USG's mistake defenses. Aplee. App. 40. The vague, general statements of what USG hoped to discover contained in its affidavit are a far cry from the "facts essential to justify its opposition" required by 56(d). Aplee. App. 40. The district court did not abuse its discretion in denying USG's request.

2.      Rule 26(f) Meet and Confer

Second, USG argues that the district court violated the scheduling order by granting summary judgment prior to a Rule 26(f) meeting. In April 2007, the court entered a scheduling order in which Trans-Western and Wolverine, a former player in this case, agreed to file cross-motions for summary judgment. Aplt.

App. 105. The scheduling order provided that following the disposition of these claims, all of the parties, including Trans-Western and USG, would "meet and confer" again "pursuant to the provisions of Rule 26(f), on a schedule for the disposition of any remaining claims." Aplt. App. 105. Thereafter, the claims between Trans-Western and Wolverine went to the court of appeals. Aplt. App. 124. The mandate issued in November 2009, and Trans-Western filed a second amended complaint in March 2010 which USG answered on June 1, 2010. Aplt. App. 139, 141-156, 175-185. In July 2010, Trans-Western moved for partial summary judgment against USG. Aplt. App. 186.

The district court's grant of partial summary judgment was not an abuse of discretion. Nothing suggests that USG sought to enforce the scheduling order, now over three years old, after it answered Trans-Western's second amended complaint. At best, the scheduling order said the parties would meet and confer — it did not preclude motion practice. Rule 56(b) allows the filing of a summary judgment motion "at any time until 30 days after the close of all discovery." In any event, nothing suggests that the outcome in this case would have differed given the operative facts had the parties attended a Rule 26(f) meet and confer.

B.   Grant of Partial Summary Judgment

USG argues that the district court erred in granting partial summary judgment to Trans-Western because the lease failed for want of mutuality and consideration. Aplee. Br. at 38. "The formation of a contract requires a bargain

-10-

in which there is a manifestation of mutual assent to the exchange and a consideration. Consideration sufficient to support the formation of a contract requires that a performance or a return promise must be bargained for." Aquagen Int'l, Inc. v. Calrae Trust, 972 P.2d 411, 413 (Utah 1998) (internal citations and quotations omitted). "For the mutual promises of the parties to a bilateral contract to constitute the consideration for each other, the promises must be binding on both parties." Res. Mgmt. Co. v. Weston Ranch & Livestock Co., 706 P.2d 1028, 1036 (Utah 1985). We review the district court's grant of summary judgement de novo, applying the same standard as the district court. Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009).

Nothing in the record supports USG's assertion that the contract fails for lack of consideration. Consideration does not require an actual payment, only a promise to pay. Copper State Leasing Co. v. Blacker Appliance, 770 P.2d 88, 91 (Utah 1988). We cannot say it better than the district court: "Trans-Western tendered a Key Bank draft payable to the order of USG in the amount of $32,680.00," and "USG had the ability to negotiate the draft from the moment of delivery." Trans-Western Petroleum, Inc., 2011 WL 223734 at *4.

In an email, later discovered by USG, Trans-Western's owner and sole officer, Isern, indicated he intended to obtain a legal opinion about the status of the Trans-Western lease before he paid the draft. Aplt. App. 1371. This email does not change the draft's validity or obviate Trans-Western's promise to pay.

-11-

See e.g., Stillmas v. Teachers Inc., 343 F.3d 1311, 1317 (10th Cir. 2003) ("[C]onstruction of contracts is generally guided by the 'objective theory' of contracts—what is important is what the language of the document conveys to reasonable people in the circumstances, not what a party to the agreement privately intended."); Ford v. Am. Express Fin. Advisors, 98 P.3d 15 (Utah 2004). There is no indication that Isern took any affirmative steps to prevent the draft from being paid. In fact, to the contrary, Trans-Western expressly requested that USG present the draft for payment, which USG never did. Aplt. App. 1390. The lease stated it was supported by valid consideration. Aplt. App. 1042. This consideration was not conditioned on USG presenting the draft for payment. Trans-Western and USG exchanged promises, providing adequate consideration and therefore, the district court did not err in granting summary judgment.

C.      Damages

The Utah Supreme Court held that general (or direct) and consequential (or special) damages are available for the breach of an oil and gas lease and should be measured in "much the same way as expectation damages for the breach of any other contract." Trans-Western Petroleum, Inc., 2016 WL 3369544 at *1. In light of the Utah Supreme Court's holding, we remand to the district court for consideration of damages res nova and a proper determination of the amount.

AFFIRMED IN PART and REMANDED.

-12-